JULIA S. PAPPAS *vs.* ELSIE M. MAXWELL
(and a companion case[1]).

Essex. November 7, 8, 1957. — May 13, 1958.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Real Property*, Boundary. *Way*, Private: extinguishment. *Easement.*
  *Adverse Possession and Prescription. Equity Pleading and Practice*,
  Master: exceptions to report; Dismissal of bill without prejudice;
  Pending suit. *Res Judicata.*

Where it appeared that the owner of a parcel of land with two houses
  close together thereon conveyed a lot and one of the houses from the
  parcel by a deed stating that the boundary line dividing that lot from
  the remaining lot "runs through the middle of a foot and carriage
  way" to be used in common, and thirteen years later conveyed the
  remaining lot and house, that the measurements of the lots set forth
  in the deeds fixed their common boundary line on a so called "stake
  line," and that since about the time of the later conveyance the center
  line of a driveway actually used between the houses was on the earlier
  conveyed lot about two feet from the "stake line," the proper con-
  clusion was that the "stake line," not the center line of the driveway
  actually used, was the common boundary line of the lots. [556–557]
A right of way was not extinguished by mere nonuse by the dominant
  tenant without adverse use by the servient tenant. [557]
Facts found with respect to a right of way from a street along a common
  boundary line of the servient lot and the dominant lot between the
  houses on the lots showed that the rear portion of the right of way had
  been extinguished by adverse possession of the servient tenant by
  reason of the existence of an outbuilding, exclusively used by him, on
  the right of way behind the houses, of use of the area to the rear of the
  outbuilding by him for storage of ladders and other equipment, and of
  the existence of bushes, serving as a fence, planted by him along the
  boundary line behind the outbuilding. [557]

[1] Julia S. Pappas *vs.* Elsie M. Maxwell and her husband, Erving O. Maxwell.

Exceptions to the report of a master grounded on his refusal to make certain findings on unreported evidence and included in a motion to recommit by the excepting party which was denied were nugatory. [558]

A vague and indefinite decree in a suit in equity merely enjoining the defendant from obstructing a right of way "as it has been used" in the area between two houses did not make res judicata the issues, raised in a subsequent suit between the same parties, as to the correct location of the right of way in that area and whether it extended over land to the rear of the houses. [558]

A motion by the plaintiff in a suit in equity to dismiss the bill without prejudice was properly denied where, even if the relief originally sought by him had become unnecessary, further issues raised by the defendant's answer and by amendments of the bill had been determined by a master after lengthy hearings and the plaintiff's motion was not filed until several months after confirmation of the master's report. [558–559]

In a suit in equity against a wife and her husband, a plea grounded on pendency of another suit by the same plaintiff against the wife alone was properly sustained where it appeared that the second suit involved the same subject matter and sought the same relief as the first and it did not appear that the husband had any interest. [559]

Two BILLS IN EQUITY, filed in the Superior Court on January 17, 1955, and June 4, 1956, respectively.

In the first suit, following a master's report, there were certain interlocutory decrees by *Nagle,* J., and further interlocutory decrees and a final decree by *Paquet,* J. In the second suit, there was an interlocutory decree by *O'Connell,* J., sustaining a plea, and a final decree by *Thompson,* J., dismissing the bill.

*Leslie L. Landers,* for the plaintiff.

*William H. K. Donaldson,* for the defendants.

COUNIHAN, J. These are two bills in equity brought by the owner of premises numbered 25 Home Street in Hamilton. The first bill was filed on January 17, 1955. In it the plaintiff sought a determination of the ownership and the location of a right of way alleged to exist between the plaintiff's premises and those of the defendant. In the bill the plaintiff also sought injunctive relief against the defendant from interfering with an outhouse and shed situated on part of the right of way. This bill was referred to a master who filed a report. On September 30, 1955, an interlocutory decree was entered sustaining two of the plaintiff's excep-

tions to the report and sustaining one exception of the defendant. All other exceptions were overruled and the report was confirmed. The plaintiff appealed from the interlocutory decree confirming the master's report, and from the denial of the plaintiff's motion to recommit, to dismiss the report, to vacate order of reference and to refer the case to a new master or have it heard by the court. On May 21, 1956, several months after the master's report was confirmed, the plaintiff filed a motion to dismiss her bill which was denied after hearing. From the denial of this motion the plaintiff also appealed. On September 21, 1956, a final decree was entered establishing the right of way at a width of eight feet and declaring that part of the right of way originally established had been extinguished by exclusive, open, continuous and adverse possession of the defendant for more than twenty years. The plaintiff also appealed from the final decree. There was no error.

On June 4, 1956, before the entry of the final decree in the first suit, the second bill by the plaintiff was filed seeking substantially the same relief sought in the first. A plea in abatement by the defendants was sustained by a judge and he ordered the second bill to be dismissed. A final decree was entered dismissing this bill from which the plaintiff appealed. There was no error.

Some of the alleged errors in the first suit were not argued in the plaintiff's brief so we treat them as waived. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698. Those argued we deal with below.

The substance of the master's report in the first suit as confirmed by the judge is as follows: One J. Webster Dane originally owned the entire tract comprising the lots involved. Sometime before May 9, 1908 (it does not appear when), he moved onto this land the two buildings owned and occupied by the parties to this suit. The foundation lines of these buildings are about fifteen feet apart. To the rear of what is now the defendant's lot and largely within the area between the foundation lines of the houses as ex-

tended he moved at the same time an outhouse with doors on each side of it for the use of the owners of the two lots.

By deed dated May 9, 1908, Dane conveyed the land now owned by the defendant "with the buildings thereon" to one Bridges and others. The lengths of the boundary lines of this land were given as approximate distances in feet. In this deed it was further recited, "The line on the north easterly side of the granted premises and dividing the same from other land of the grantor runs through the middle of a foot and carriage way, which way is to be used in common by each and every one of the parties to this deed and their heirs and assigns as appurtenant to their respective estates."

By deed dated August 27, 1921, he conveyed the remaining lot to James P. Pappas, the deceased husband of the plaintiff and one of her predecessors in title. From the time of this conveyance the plaintiff and her family occupied the dwelling house on her lot. The defendant acquired title to her lot by deed of Bridges and others dated December 6, 1928, and with her family has since occupied the dwelling house on that lot.

Sometime between 1921 and December 6, 1928 (it does not appear just when), an extension was added to the front of the outhouse projecting toward the front of the lot. It was built by one of Bridges's coöwners and some of the materials used were furnished by the plaintiff. Since the beginning of 1929, the outhouse has not been used for its original purpose. Continuously after January 1, 1929, the defendant's automobiles were exclusively garaged in that structure until sometime in 1951 when due to want of repair it became no longer usable. The plaintiff and the members of her family never used this structure for the garaging of automobiles.

From early in 1929 the original outhouse was used by the defendant, primarily for storage, to the exclusion of the plaintiff and members of her family. Later the defendant's husband removed part of the roof of this building and attached it to her house as a portico over the front door. Some months later the defendant's husband reroofed the section

he had taken off. Early in 1929, he nailed the door on the plaintiff's side of the original outhouse and placed a workbench against the inside of this door. All this was done without any objection on the part of the plaintiff.

The plaintiff in 1945 or 1946 ripped some boards off the side of this building facing her house. The master expressly found that this incident was not sufficient to interrupt the defendant's adverse possession.

The master further found that the defendant made constant, uninterrupted and adverse use of the area to the rear of the outhouse on her side of the stake line [1] to store ladders, sawhorses and tools without objection from the plaintiff. She also planted bushes along the stake line to the rear of the outhouse which served as a fence as they grew. These bushes were cut down by the plaintiff's daughter twenty-five years after they were planted.

Part of the area between the two houses has been used as a driveway since 1921. The center line of this driveway was about two feet one half inch on the defendant's side of the stake line. At no time since 1921 has the stake line been the middle of the driveway as it was actually used. The master found the driveway as actually used to be the right of way referred to in the earlier deeds. Because the doors of the outhouse and the extension facing Home Street opened outward the master found that the right of way ceased four feet from the front of the extension.

The decree of the court holds that the stake line is the dividing line between the two properties and that this line was the center of an eight foot right of way which is sufficient for foot passage and to accommodate present day pleasure vehicles and delivery trucks. It further held that the right of way ceased at a point about four feet in front of the rear building because of extinguishment by the adverse possession of the defendant.

_____

[1] This stake line runs from the street to the rear of both lots and we infer that it was adjudged by the court to be the dividing line between the lots as established in the original deeds from Dane. Part of the outhouse is about two and one half feet on the defendant's side of the stake line.

The final decree in the first bill differs from the conclusion of the master's report only in regard to the determination of the line separating the two lots. The judge was right in his interpretation of the original deeds from Dane as conveying two contiguous lots whose common property line was to be the center of the right of way. The distances set out in the deed under which the plaintiff subsequently acquired title appear to be accurate when the natural construction of the words in the deed is adopted. We therefore reject the plaintiff's contention, which was apparently adopted by the master, that the location of the right of way as actually used must first be determined and that its center line be considered as the northeasterly property line of the defendant. The fact that the right of way actually used by the defendant utilizes more of her land than the way granted does not deprive her of full rights in the way originally granted. Mere nonuser by her of the full width of the granted way in the absence of any showing of adverse use by the plaintiff for the prescriptive period would not work an extinguishment. *Delconte* v. *Salloum*, 336 Mass. 184, 188. *Patterson* v. *Simonds*, 324 Mass. 344, 352–353. However, there was a nonuser by the plaintiff of the rear portion of the right of way and adverse use of it by the defendant for over twenty years which extinguished all rights of the plaintiff in that part of the granted right of way. Even if we assume that Dane intended to grant a right of way to the rear of both lots, it is plain that the use of such a right of way was rendered impossible by the existence of the outhouse and the extension of it as well as by the planting and growth of the bushes placed on the right of way by the defendant behind the outhouse along the stake line. The right of way in this part of the area between the lots was extinguished by adverse possession. *Cianciulli* v. *Marlowe*, 330 Mass. 410, 413, and cases cited. Where, as here, such acts of the servient tenant render the use of only part of a right of way impossible, the easement is extinguished only as to that part. *Brooks* v. *West Boston Gas Co*. 260 Mass. 407, 410–411.

We are of opinion that the master was right in finding that the acts of the plaintiff in tearing boards off the outhouse in 1945 or 1946 were not sufficient to interrupt the defendant's adverse possession.

The master refused to make two specific findings based upon unreported evidence. His refusal was the subject of objections of the plaintiff which later became exceptions. "If such facts are really important the proper remedy is a motion to recommit with directions to make findings upon specified questions of fact." *Carleton & Hovey Co.* v. *Burns,* 285 Mass. 479, 483. See *Tuttle* v. *Corey,* 245 Mass. 196, 204; *Minot* v. *Minot,* 319 Mass. 253, 259; *Lowell Gas Co.* v. *Department of Public Utilities,* 324 Mass. 80, 90.

It is important to note that these exceptions were included in the plaintiff's motion to recommit which was denied by the judge. These exceptions are now nugatory.

The plaintiff contends that a decree entered in 1947 in a suit between the same parties is res judicata as to the existence of the right of way and prevented any extinguishment of it by adverse use. The decree, which was not pleaded by the plaintiff, merely enjoined the defendant from obstructing "a right of way as it has been used from foundation wall to foundation wall of the houses of the respective parties hereto in the past." The decree made no reference to the length of the right of way or whether it extended to the area behind the outhouse. It did not locate just where the right of way existed in the area between the foundation walls of the houses of the parties. The decree was vague and indefinite and it cannot be held that it was determinative of the issues tried out in this bill.

The plaintiff contends that her motion to dismiss the first bill without prejudice should have been allowed. She relies upon the fact that the outhouse and the extension have been removed. It is true that this bill originally sought primarily to restrain the defendant from interfering with the outhouse and the extension thereof. However, the extinguishment of this part of the right of way was raised

in the answer of the defendant and by amendments to the bill the plaintiff sought a determination of the location of the granted right of way.

The motion to dismiss was not filed until several months after the exceptions to the master's report were overruled and an interlocutory decree had been entered confirming the master's report. Nothing further remained to be done except the entry of the final decree. In these circumstances, and particularly after hearings before the master which required twenty-seven days, the motion of the plaintiff to dismiss the first bill without prejudice was properly denied. "The general rule as stated in *Hollingsworth & Vose Co.* v. *Foxborough Water Supply District,* 171 Mass. 450, . . . is that a plaintiff may have his bill dismissed as of right on payment of costs if nothing has been done which has operated materially to change the defendant's position and give him rights which it would operate to his legal prejudice or which it would be inequitable to disregard. If the defendant's position has been so changed and he has acquired such rights, then the court on the defendant's objection and at his request, will refuse to allow the bill to be dismissed and will retain the case for a disposition of it on the merits, or in such other manner as will protect the defendant's rights." *Kyle* v. *Reynolds,* 211 Mass. 110, 111. See *Lumiansky* v. *Tessier,* 213 Mass. 182, 190.

The second bill was brought by the same plaintiff against the same defendant and her husband. It does not appear that the husband had any interest in the female defendant's property. This bill makes substantially the same averments and seeks the same relief as the first bill. The defendants filed a plea in abatement alleging the pendency of the first bill. After hearing the plea was sustained by a judge other than the one who heard the first bill and this bill by final decree was dismissed. A defendant may not be vexed without reason by successive proceedings for the same cause of action. See *Kelly* v. *First Citizens Bankers Corp.* 316 Mass. 520, 521.

In the first suit the interlocutory decrees are affirmed and

the final decree is affirmed with costs of this appeal to the defendant.

In the second suit the interlocutory decree sustaining the defendants' plea in abatement is affirmed and the final decree is affirmed with costs of this appeal to the defendants.

*So ordered.*