JOHN F. TEHAN & another *vs.* SECURITY NATIONAL BANK
OF SPRINGFIELD & others.

Hampden.    September 23, 1959. — December 21, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE,
& CUTTER, JJ.

*Way,* Private: extent of easement, obstruction. *Easement. Equity Juris-
diction,* Obstruction of way, Laches, Conditional relief, One seeking
equity must do equity, Assessment of damages. *Laches. Equity
Pleading and Practice,* Decree, Jury issues. *Building Laws. Fire
Escape. Damages,* For obstruction of way.

A general right of way by grant, not subject to any express limitations,
over a twenty foot passageway running between two public ways and
parallel to a third in a business district of a city was not limited to uses
likely at the time of its creation, but extended to such uses as were
reasonably necessary for the full enjoyment of the premises to which
it was appurtenant and covered pedestrian and vehicular travel and
transportation of property.  [181–182]

A drive-in window constructed by a bank at the rear of its building so
as to protrude six feet into a twenty foot passageway subject to a
general right of way of others was an improper obstruction of the
passageway.  [182]

Facts found by a master in a suit in equity against a bank seeking an
injunction against its maintenance of a drive-in window encroaching
on a passageway at the rear of its building, showing that the plaintiff
must have known of the construction of the window as soon as it was
started three years before the commencement of the suit, did not show
delay in bringing the suit unreasonable or prejudicial to the defendant
or that the defendant had sustained the burden of proving the affirma-
tive defence of laches.  [182–183]

In a suit in equity by an abutter on a passageway seeking an injunction
against maintenance by a bank, also an abutter, of a drive-in window
obstructing the passageway, where it appeared that the plaintiff
maintained a fire escape obstructing the passageway "to substantially
the same extent and in the same general way as" the drive-in window,
a decree granting the plaintiff relief conditional on the plaintiff's first
removing the obstructing portions of the fire escape was proper, al-
though each party had acquiesced in the other's encroachment for a
substantial period less than that for establishing prescriptive rights;
and this court indicated the details of a mandatory injunction to be
issued against the defendant respecting the removal of the drive-in
window and of the conditional action to be required of the plaintiff.
[183–184]

G. L. c. 143, § 43, did not authorize maintenance on a building abutting a passageway of a fixed fire escape substantially protruding into and obstructing travel in the passageway, but at most authorized a fire escape "project[ing] over" the passageway at a height not interfering with the ordinary use thereof. [184]

Where it appeared in a suit in equity that abutting a twenty foot passageway running between two public ways in a business district of a city were premises of a bank having a right of way over the whole passageway and, diagonally opposite, a parking lot located at the corner of the passageway and one of the public ways and having a like right of way in the passageway, that the proprietor of the parking lot had marked on its surface a "channel" running from the public way across it to the passageway at a point near a drive-in window at the rear of the bank building, that the end of the passageway at such corner was blocked in business hours by automobiles of unknown persons, and that automobiles of persons going to the drive-in window of the bank and others used the "channel" on the parking lot in conjunction with the passageway, a decree obtained by the plaintiff, another abutter on the passageway, enjoining the bank and the proprietor of the parking lot from "channelling traffic" across the parking lot into the passageway was too broad in that it prevented reasonable use of the passageway for access to the bank or the public ways by persons properly on the parking lot, but the plaintiff was entitled to relief requiring the bank and the proprietor of the parking lot to conduct their businesses so as not to cause unreasonable congestion of traffic in and obstruction of the passageway and to make reasonable efforts to discourage persons other than their customers from seeking access to and egress from the passageway over the parking lot. [185–187]

The enactment of G. L. c. 231A, § 1, did not affect existing rights of parties to trial by jury, but neither did it create new rights thereto. [187]

In a suit in equity seeking injunctive relief and incidental damages, and declaratory relief, a reference to a jury of the determination of the damages was not required by G. L. c. 231A, § 1, and, where the matter of damages was only a trivial issue, was not a proper exercise of the discretionary power to frame jury issues in equity. [187–188]

BILL IN EQUITY, filed in the Superior Court on July 26, 1956.

An interlocutory decree confirming a master's report after sustaining of certain exceptions of the plaintiffs, and a final decree granting certain relief and directing a jury trial respecting damages sought by the plaintiffs, were entered by *Hudson*, J. The defendants Security National Bank of Springfield, Rustein, and 445 Corporation appealed from the sustaining of the exceptions and the final decree.

*Emerson S. Searle,* (*Joseph Swirsky* with him,) for Security National Bank of Springfield.

*Roger Rustein, pro se,* submitted a brief.

*David Burstein,* (*James F. Egan* with him,) for the plaintiffs.

CUTTER, J.   The plaintiffs and the defendants severally own parcels of land along a twenty foot passageway between Taylor and Lyman streets in Springfield as shown on the accompanying plan.   The plaintiffs own the parcel (A) at the northwest end of the southwesterly side of the passageway.   On the same side, the defendant Security National Bank of Springfield (the bank) owns a parcel (B) used for banking.   Other defendants own parcels C and D on the same side.   All these parcels contain buildings fronting on Main Street which runs parallel to the passageway.   On the northeast side of the passageway are two parcels.   That at the northwest end of the passageway (F) is owned by the defendant 445 Corporation and contains, facing the passageway, a parking area leased to the bank, and a building facing Lyman Street.   Adjacent to parcel F, at the southeast end of the passageway, is a parking lot (E) owned by the defendant Rustein.

The plaintiffs and the defendants, respectively, have an easement in the passageway throughout its entire length and the plaintiffs and the bank own the fee to the center line of the passageway abutting their property. Rustein has rented to the bank space in his parking lot (E) and has marked the surface of the parking lot with parallel white lines so that there is a marked channel (H in the plan) for traffic over parcel E from Taylor Street to the passageway at a point opposite the east corner of the bank's property (B). The bank in 1953 built a drive-in window of cement blocks at the rear of its building. This structure "protrudes six feet into the passageway," and has "a flat . . . canopy ten feet above the ground which extends nine feet into the passageway." Adjacent to the plaintiffs' parcel A and to the bank's parcel B is a concrete sidewalk eight to ten inches high and about four to four and one half feet wide. "An iron fire escape [built in 1943] at the rear of parcel A protrudes six feet into the passageway" and the bases extend, one seven to eight feet, and the other nine feet, into the passageway. "[N]o one complained about the encroachment of the fire escape . . . prior to the" initiation by the plaintiffs of this bill in equity against the bank and the other owners of land abutting on the passageway seeking (a) certain declaratory relief, (b) damages for the encroachment of the drive-in window, and (c) to enjoin Rustein from permitting vehicles to be parked on the passageway and the bank from conducting a drive-in banking business on the passageway and maintaining the window. No one complained about the drive-in window except the plaintiffs who complained by letter a few days prior to bringing this bill.

The southeasterly end of the passageway for some years has been entirely blocked during business hours without right by parked automobiles of persons unknown through no fault of any party. The bank and the plaintiffs have acquired the prescriptive right so to park vehicles along the southwest side of the passageway beside their respective parcels.

There "is no material difference in kind or degree between

the two obstructions [the fire escape and the drive-in window] in terms of the space they occupy." The "fire escape since 1943 has blocked the passageway to substantially the same extent and in the same general way as has the drive-in window." Automobiles whose owners use "the drive-in window enter Rustein's lot from . . . Taylor Street, and proceed . . . between the . . . white lines [H on the plan] . . . across lot F, and enter the alley about sixteen . . . feet from the window." In rush hours sometimes there are eight automobiles in line, "one . . . completely in the passageway at the drive-in window, another partly in the passageway, and the rest on parcels F and E." A normal transaction at the window consumes between thirty and ninety seconds and there are from fifty-nine to one hundred twenty-one users of the window per day. Nearly twice as many other automobile owners, not on bank business or controlled by the bank, go from Taylor Street to Lyman Street through Rustein's parking space and the northwest end of the passageway. Automobiles also do enter the passageway from Lyman Street to go to Rustein's parking space, to the bank's parking area on parcel F, or across Rustein's parking lot to Taylor Street. "At times there is annoying congestion in the alley in which the drive-in customer is a contributing factor, as are the parking of cars against the plaintiffs' building, the blocking of the . . . [Taylor Street] end of the alley by unidentified cars, and the passage of cars not on bank business." Such delays as occurred prior to the commencement of the bill occurred about 3 P.M., when the bank closed, and affected persons wishing to enter the passageway from Lyman Street until someone in the waiting line yielded his space. Since the commencement of the bill, "the congestion has been controlled and alleviated by the use of uniformed" bank guards.

The case was referred to a master, who found the facts stated above. The master reached two principal conclusions, viz., "that the operation of this drive-in window and the . . . traffic into and from this alley to use the same does not unduly burden" the plaintiffs' easement, and also that

the plaintiffs "do not come into court with clean hands with respect to the physical encroachment on the passageway of this drive-in structure." The trial judge sustained the plaintiffs' exceptions to these two conclusions as unsupported by the facts found, and confirmed the master's report as thus modified. A final decree (1) determined that each of the parties had an easement as found by the master in the passageway and that the plaintiffs and the bank "own the land to the center line of the passageway abutting their premises and have a prescriptive right to park automobiles on the [south]westerly side of the passageway abutting their respective premises"; (2) stated that the bank's drive-in structure within the limits of the passageway is "in violation of" the plaintiffs' easement, ordered the bank to remove it, and permanently enjoined the bank from maintaining any like structure within the limits of the passageway; (3) determined that the bank and Rustein have overburdened the plaintiffs' easement by "channelling traffic in one way travel across" Rustein's property "in connection with and as a part of a banking business" and restrained the bank and Rustein "from so channelling traffic diagonally across said passageway" after the bank razes its structure; and (4) granted a jury trial to the plaintiffs on the issue of damages.

The bank, Rustein, and the owner of parcel F appealed from the interlocutory decree sustaining the plaintiffs' exceptions to the master's report and from the final decree.

1. The provisions of the final decree, that each abutting owner "has an easement and right of passage twenty feet in width in . . . [the] passageway" and that the plaintiffs and the bank "own the land to the center line of the passageway abutting their premises," are justified by the master's subsidiary findings. The plaintiffs do not challenge the bank's right to an easement of passage and there is no finding of any express restriction upon the easement. See *Mahon v. Tully*, 245 Mass. 571, 577. That the passageway is a way, much used by the public (see *Opinion of the Justices*, 313 Mass. 779, 782–783), twenty feet wide, and in a business

area tends to indicate freedom to use it for vehicles as well as on foot in much the manner of a street in respect, at least, of travel and transportation of property to and from land of abutting owners. The easement is not to be limited to such use as seemed likely to be made about the time of the conveyances which created it. In the absence of express limitations, such a general right of way obtained by grant may be used for such purposes as are reasonably necessary to the full enjoyment of the premises to which the right of way is appurtenant.[1] *Parsons* v. *New York, N. H. & H. R.R.* 216 Mass. 269, 273. *Mahon* v. *Tully,* 245 Mass. 571, 577. *Davis* v. *Sikes,* 254 Mass. 540, 547. See *Kakas Bros. Co.* v. *Kaplan,* 331 Mass. 323, 328. See also *Frawley* v. *Forrest,* 310 Mass. 446, 451, and discussion in *Opinion of the Justices,* 297 Mass. 559, 561–565, of the somewhat analogous easement in public ways. Cf. *Swensen* v. *Marino,* 306 Mass. 582, 585–587; *Hewitt* v. *Perry,* 309 Mass. 100, 105; *Doody* v. *Spurr,* 315 Mass. 129, 133–134; *Hodgkins* v. *Bianchini,* 323 Mass. 169, 173. Cf. also *Clarkin* v. *Duggan,* 292 Mass. 263, 266.

2. The drive-in window constitutes an improper obstruction of the easement. See *Connor* v. *McKenna,* 339 Mass. 17, 18–19. See also *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 109–110; *Ottavia* v. *Savarese,* 338 Mass. 330, 335–336. Cf. *Triulzi* v. *Costa,* 296 Mass. 24, 28. It must be determined, however, whether under equitable principles its removal should be ordered. See *Gray* v. *Howell,* 292 Mass. 400, 403.

The plaintiffs are not barred by laches. The master found that the manager of the plaintiffs' property, a son of one of the plaintiffs, "must have known of" the construction of the drive-in window "as soon as its construction was started" in 1953. This bill was not filed until July 26, 1956. The burden was upon the bank and Rustein to establish the facts (see *Carter* v. *Sullivan,* 281 Mass. 217, 226–227) neces-

---

[1] No party questions the conclusion of the master that the plaintiffs and the bank have acquired prescriptive rights to park automobiles (cf. *Opinion of the Justices,* 297 Mass. 559, 564; *Loosian* v. *Goudreault,* 335 Mass. 253, 255–256) beside their respective properties.

sary to support the affirmative defence of laches. See *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 300. The master, however, made no findings which lead us to the conclusion (a) that there was unreasonable delay in seeking to restrain the drive-in window, or (b) that any delay caused substantial prejudice to the bank. See *Westhampton Reservoir Recreation Corp.* v. *Hodder,* 307 Mass. 288, 290–291; *Ferrone* v. *Rossi,* 311 Mass. 591, 595–596. Particularly is this true because some of the consequences of maintaining the window might not have been easily anticipated in 1953.

The master did find that the plaintiffs in seeking relief did "not come into court with clean hands with respect to the physical encroachment on the passageway of this drive-in structure." This conclusion was based upon his finding that the "fire escape since 1943 has blocked the passageway to substantially the same extent and in the same general way as has the drive-in window." The master noted an offer by the plaintiffs "to remove this fire escape made three years after the construction of the drive-in window" but stated that it came "too late and that the bank was entitled to rely . . . upon the fact that . . . [the plaintiffs] could not complain . . . when themselves permitting a substantially similar obstruction to exist."

So long as the plaintiffs themselves continue to obstruct the passageway, they are not entitled to equitable relief against a similar obstruction by the bank. *Loud* v. *Pendergast,* 206 Mass. 122, 124. *Weintraub* v. *L & F Realty Co. Inc.* 331 Mass. 711, 713–714. See *Mickelson* v. *Shuster,* 319 Mass. 210, 212–213. Cf. *Stewart* v. *Finkelstone,* 206 Mass. 28, 37, where the plaintiffs' violations were insignificant when compared with the defendants' deliberate violations of certain restrictions; *Carter* v. *Sullivan,* 281 Mass. 217, 224–226; *MacCormac* v. *Flynn,* 313 Mass. 547, 549–550. Nevertheless, there is no reason why the plaintiffs should not have relief properly conditioned upon their first removing all permanent parts of the fire escape which may interfere with reasonable use of the passageway for

travel. See, as to conditional relief, *Jurewicz* v. *Jurewicz*, 317 Mass. 512, 517; *Kressler* v. *Flynn*, 323 Mass. 610, 612–613; *Nissenberg* v. *Felleman*, 339 Mass. 717, 724. See also *Canadian Club Beverage Co.* v. *Canadian Club Corp.* 268 Mass. 561, 572–573. This will not require the plaintiffs to remove any part of the fire escape which is above the usual height of vehicles likely to use the passageway, nor will it prohibit substituting for the present fixed fire escape a fire escape which can be raised and lowered and which, except during emergencies, will be wholly above the level of vehicles in the passageway. See *Sargeant* v. *Traverse Bldg. Trust*, 267 Mass. 490, 494–495. The mandatory injunction requiring the bank to raze the drive-in window structure is to be modified to make such relief conditional upon prior removal of so much of the plaintiffs' fire escape as obstructs full use of the passageway. The bank by such conditional injunction shall be permitted to retain a canopy extending as far as the present canopy but at a height which does not unreasonably obstruct the easement of travel.

The acquiescence of the bank in the presence of the fire escape was for a period of years, less than the period for establishing prescriptive rights. Despite this acquiescence, the plaintiffs must be required to remove their own encroachment as a condition precedent to ending the bank's similar encroachment, acquiesced in by the plaintiffs for a substantial (though shorter) period.

The plaintiffs' encroachment on the passageway is not authorized, as against others having rights in the passageway, because of G. L. c. 143, § 43 (as amended through St. 1943, c. 544, § 3). We do not read § 43 as authorizing generally obstructions of passageways for fire escape purposes. Decided cases discussing § 43 and related sections of c. 143 do not deal with this matter. See *Repucci* v. *Exchange Realty Co.* 321 Mass. 571, 574–575, and cases there cited. At most, the section permits fire escapes which "may project over the highway, or over a right of way" at a height which will not interfere with the ordinary use of such ways. Any other interpretation of the section would

raise serious questions, which we do not consider, whether the section caused an unconstitutional taking of property without just compensation. See *Ferguson* v. *Commissioner of Corps. & Taxn.* 316 Mass. 318, 322–324. See also *New York Cent. R.R.* v. *Ayer*, 239 Mass. 70, 79.

3. The final decree permanently enjoins Rustein and the bank "from so channelling traffic diagonally across" the passageway. The bank's right to have persons use the passageway to approach the bank for proper purposes extends to the whole length of the passageway. See *Frawley* v. *Forrest*, 310 Mass. 446, 451. See also *Teal* v. *Jagielo*, 327 Mass. 156, 157–158. Cf. *Casella* v. *Sneierson*, 325 Mass. 85, 89–92. As a practical matter, access from Taylor Street through the passageway to the rear of the bank is now prevented by the unlawful parking of automobiles. We need not consider what remedies the bank may have with respect to such automobiles, either by injunction or by such action, if any, as may be permissible and feasible[2] to remove the automobiles as obstructions constituting a private nuisance affecting property in which the bank has an interest. The bank was not required to resort to these uncertain remedies but could arrange with Rustein to substitute for access to the passageway (and then to the bank's premises) directly from Taylor Street access over Rustein's land and the portion of the passageway between the westerly corner of Rustein's land and the bank. That portion of the passageway is open to such use as much as any other part. To the extent that the final decree (par. 3) cuts off reasonable use of the passageway for persons properly on Rustein's land seeking to go either to the bank or to the public highways, the decree (par. 3) is too broad.[3]

[2] See e.g. Restatement: Torts, §§ 264, 270; Harper and James, Torts, §§ 1.18, 2.40; Prosser, Torts (2d ed.) § 73, pp. 419–421; see also *Michalson* v. *Nutting*, 275 Mass. 232, 233–234; *Potter* v. *Gilmore*, 282 Mass. 49, 56.

[3] Cases (see e.g. *Ball* v. *Allen*, 216 Mass. 469, 474) where a landowner uses a right of way for access to land to which the easement is not appurtenant are not relevant. The bank used this passageway only for access to its own premises. It is immaterial that the bank's customers came from the public ways over Rustein's land. To the extent that they were using the passageway, they were using it as appurtenant to the bank's land, not primarily as appurtenant to Rustein's land.

An easement, not expressly restricted, of access to and passageway over a twenty foot wide passageway in the rear of a business block necessarily includes the reasonable opportunity to stop vehicles to take on and unload passengers and property (including checks and money as well as other more substantial items). Although the master concludes that "operation of this drive-in window . . . does not unduly burden [the] plaintiffs' easement," upon the subsidiary findings showing some delays and congestion, the plaintiffs are entitled to have an injunction against conduct of the bank's and Rustein's businesses in such a way that lines of traffic will form in the passageway obstructing unreasonably and in substantial degree the movement through the passageway of traffic in which the plaintiffs are interested. The plaintiffs are entitled to unconditional injunctive relief against this in the manner stated below.

If the plaintiffs so adjust their fire escape as to bring into force the mandatory injunction (discussed above) requiring the removal of the drive-in window, the bank may find it feasible to arrange a drive-in window that does not encroach upon the passageway. The bank is entitled to have vehicles stop reasonably within the area where the bank has a prescriptive right to park automobiles. It also has rights under its easement.

A decree must be framed in the Superior Court requiring the bank, in the event of the continuation of the drive-in operation, to take appropriate precautions to prevent unreasonable obstruction of the use of the passageway by the plaintiffs and by others entitled to make such use. The decree should include suitable provision for the regulation of vehicles waiting to approach the window, particularly while standing in the passageway but outside the area within which the bank has prescriptive parking privileges.

The decree, so far as practicable, should deal with one other matter. Rustein and the bank by their arrangement have facilitated the use of the passageway by persons having no business with the bank or with Rustein. Although the master found that the bank has no control over these vehi-

cles, the decree should condition continuance of any drive-in operation upon reasonable efforts in behalf of the bank and Rustein to discourage access to the passageway from Russtein's lot (and to the lot from the passageway) by persons other than the bank's or Rustein's customers.

4. The final decree referred to a jury the determination of the damages to which the plaintiffs may be entitled for "invasion of their rights in the passageway." The plaintiffs have asked injunctive relief as well as declaratory relief and damages. Damages were thus sought as an incident to usual equity relief and not merely in connection with declaratory relief. They would ordinarily be determined, if allowable at all, by the trial judge or a master in the equity proceeding. See *Somerville Natl. Bank* v. *Hornblower*, 293 Mass. 363, 367–368; *Gromelski* v. *Bruno*, 336 Mass. 678, 680–681; notes to Superior Court Rules, Annotated (1932) 44 and 45. See also *Boston* v. *Santosuosso*, 307 Mass. 302, 321–324. General Laws c. 231A, § 1,[4] does not purport to require reference to a jury of any issue of fact, where, as here, prior to the enactment of § 1, by St. 1945, c. 582, § 1, such a reference would not have been required. Section 1, in terms, did not affect then existing rights to trial by jury, but it also did not create new ones. The last sentence of § 1 is consistent with the preëxisting discretionary power to frame jury issues in equity cases. See G. L. c. 214, § 36, and *Marcoux* v. *Charroux*, 329 Mass. 687, 688, where it was said that such issues are "seldom actually granted" and that power to grant them is exercised "on rare occasions for reasons deemed sufficient." See also notes to Superior Court Rules, Annotated (1932) 44 and 45. We have no occasion to consider the effect of c. 231A, § 1, upon the

[4] Section 1 grants authority to the Superior Court and other courts having equity jurisdiction to give declaratory relief, as stated in the section, "provided, that nothing contained herein shall be construed to . . . affect their [the parties'] right to trial by jury. When a declaration of right, or the granting of further relief based thereon, shall involve the determination of issues of fact triable by a jury as of right and as to which a jury trial is duly claimed by the party entitled thereto, or issues which the court, in accordance with the practice of courts of equity, considers should be tried by a jury, such issues may be submitted to a jury in the form of questions, with proper instructions by the court, whether a general verdict be required or not."

determination of damages where only declaratory relief is sought.

The plaintiffs in equity are not entitled to damages because of the maintenance of the drive-in window for any period during which they themselves maintain a comparable encroachment upon the passageway. The only damages, which the plaintiffs can possibly recover in the light of this opinion, are for any incidental injury caused by past congestion of automobiles in the portion of the passageway lying outside (a) the area occupied by the drive-in window and (b) that within which the bank is entitled to park vehicles. Such damages cannot reasonably be more than nominal, and present an issue too trivial to justify framing a jury issue. See *Massachusetts Home Missionary Soc.* v. *Sirianni*, 252 Mass. 352, 354; *Rigs* v. *Sokol*, 318 Mass. 337, 344. Cf. *National Overall Dry Cleaning Co.* v. *Yavner*, 321 Mass. 434, 441.

5. The interlocutory decree and the final decree are reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*