ALAN SHAPIRO & another[1] vs. MARILYN BURTON
(and a companion case[2]).

Essex.  September 17, 1986. — January 2, 1987.

Present: DREBEN, SMITH, & FINE, JJ.

*Adverse Possession and Prescription. Easement.*

In proceedings to register and confirm title to two parcels of land, the judge
was not plainly wrong in finding that the respective plaintiffs had main-
tained hedges and other plantings over two ten-foot strips of land, one
on each side of a five-foot wide walkway, which together had, at one
time, been subject to a twenty-five foot wide easement granted to the
defendant; that although an open gate was located at the end of the
walkway there was a fence with shrubs behind it extending at least ten
feet on each side; that a certain predecessor in title of one of the plaintiffs
had, during a part of the period from 1947 to 1981, "opposed the use
[by the easement holders] of this land vociferously" and that some of
that predecessor's neighbors did not use the pathway when he was
present, and these findings warranted the judge's determination that
those portions of the easement over the two ten-foot strips adjoining the
walkway had been extinguished by adverse use, thus narrowing from
twenty-five feet to five feet the width of the defendant's easement;
furthermore, a finding by the judge that the predecessors' use of an
additional area, adjoining the walkway, for a fence and shrubs had been
adverse for more than twenty years was not clearly erroneous. [329-331]
Where this court concluded that the judge in Land Court proceedings had
had insufficient factual basis for ruling that the owner of a parcel of
land who had been granted an easement, as well as access to a beach,
had "no rights of use" in an existing stairway to the beach, but only the
right to build a new staircase at the locus of a previously existing one,
the cases were to be remanded for additional findings, and a balancing
of the parties' respective interests, as to such matters as the cost of
maintaining the existing stairway, the need of the fee owner to protect
against liability, apportionment of costs among the common easement
owners and, if the parties should so choose, the feasibility, cost, and
risks attendant on building another set of stairs at another location.
[331-335]

---

[1] Susan Shapiro.

[2] Terrence B. Magrath & another vs. Marilyn Burton.

PETITIONS filed in the Land Court Department on January 12, 1983, and September 25, 1984, respectively.

The cases were heard by *William I. Randall*, J.

*Julian J. D'Agostine* (*Mark E. Walsh* with him) for the defendant.

*George H. Lewald* (*Elizabeth Paine* with him) for the plaintiffs.

DREBEN, J.  Two neighboring couples, the Shapiros and the Magraths, brought these companion cases to confirm and register title to their respective parcels of water-view land in Marblehead. G. L. c. 185, § 1 (*a*). They claim title partly by grant and partly by adverse possession. Marilyn Burton, the defendant, was granted, by deed, certain easements over land of the plaintiffs, including an easement over two twenty-five-foot wide paper streets,[3] Neptune Street and Ocean Spray Avenue. (The appended sketch depicts the general configuration of the disputed boundaries.) She was also granted a right of access to Rockaway Beach. A judge of the Land Court determined that two portions of the defendant's easement[4] over Neptune Street were extinguished by adverse use, thereby narrowing the width of the easement at certain points. He also ruled that the defendant, an owner of a back parcel, "ha[s] no rights of use" in a stairway which provides access to Rockaway Beach.[5] We affirm the judgment insofar as it determines that parts of the defendant's easement have been extinguished, reverse the ruling as to the staircase, and remand for further proceedings.

The facts are taken from the findings of the judge. The plaintiffs Terrence B. and Katherine B. Magrath own a parcel of land fronting on Ocean Spray Avenue. Their neighbors, across Neptune Street to the west, also fronting on Ocean

---

[3] We use the term "paper street" to mean a street shown on a recorded plan but never built on the ground.

[4] Several defendants who owned back parcels participated in the Land Court proceeding. Only one of them, Marilyn Burton, has appealed.

[5] The decision precluded access to other existing staircases, but Burton does not make any argument as to those. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Spray Avenue, are the plaintiffs Alan and Susan Shapiro. The northernmost portion of Ocean Spray Avenue is on a bluff overlooking the Atlantic Ocean, and the "bank itself . . . comprise[s] a goodly part" of the avenue. The bluff is subject to erosion and is supported by a sea wall and terraces. They were maintained by the plaintiffs or their predecessors.

The record title shows that the Magrath and Shapiro parcels are separated by Neptune Street, which is perpendicular to Ocean Spray Avenue. As shown on an 1877 plan, Neptune Street extends from Atlantic Avenue on the north to Ocean Spray Avenue on the south. By deed, the defendant Burton has rights of way over the full length and breadth of both Neptune Street and Ocean Spray Avenue.

1. *Easement over Neptune Street.* The dispute as to the adverse use of Neptune Street concerns two separate portions of the easement. One is the portion which directly leads into Ocean Spray Avenue and over which there is a paved footpath, three feet wide. This path extends from a travelled roadway for vehicular traffic called Pig Rock Lane, which runs from Atlantic Avenue over a portion of Neptune Street to a cul de sac.

The plaintiffs claim, and the judge found, that the width of the easement which extends from the cul de sac to Ocean Spray Avenue is only five feet and that the easement over two ten-foot strips, one on each side of the walkway, was extinguished. He found, in other words, that the easement over Neptune Street had been narrowed by adverse use by the plaintiffs and their predecessors from twenty-five feet to five feet.[6]

The judge found, and there was evidentiary support for findings, that the Magraths and the Shapiros maintained hedges and other plantings along the walkway over the ten-foot strips; that while there was an open gate where the paved walkway over Neptune Street intersected Ocean Spray Avenue, on each side of the gate, "across the whole of what was Neptune Street was a fence with shrubs behind it"; that Hyman Auerbach, the

[6] Although the walkway is only three feet wide, neither the Magraths nor the Shapiros, respectively, claim extinguishment in more than a ten-foot wide strip. Therefore, the easement will be shown as a five-foot easement on the certificate of registration.

owner of the Shapiro parcel from 1947 to 1981,[7] "a determined and domineering man who did not take kindly to being thwarted in whatever he wanted to do . . . opposed the use [by the easement holders] of this land vociferously"; and that some of the neighbors did not even use any of the pathways when Auerbach was around. There was also photographic evidence of the narrow walkway and testimony that it now looks very much as it did in 1947. The judge also took a view.

Although there was conflicting evidence, we cannot say that the judge's findings are clearly erroneous, see Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), made applicable to these proceedings by an amendment to Mass.R.Civ.P. 1, 385 Mass. 1214 (1982), or that he used an incorrect standard in determining that the easements over the two ten-foot strips adjoining the walkway were extinguished by adverse use. The defendant quite rightly points out that the standard as to the extinguishment of an easement differs from the standard applied to the creation of rights by adverse possession. There are "factual differences in the type of use which will extinguish an easement as compared to the type of conduct which will create rights by prescription . . . . An easement is acquired by prescription through the use of land in the possession of another. An easement is extinguished by prescription through a use . . . of land in [one's] own possession." *Lemieux* v. *Rex Leather Finishing Corp.*, 7 Mass. App. Ct. 417, 422 (1979). To establish a use adverse to the holder of an easement requires a use "in a manner so inconsistent with the . . . easement that it [is] extinguish[ed] . . . after the lapse of twenty years." *Id.* at 423.

The judge's conclusions that the actions of Auerbach and those of Magraths' predecessors (although the latter were somewhat less hostile) interfered, and were inconsistent with the easements over the two ten-foot strips for the prescription period are in accord with our cases. *Pappas* v. *Maxwell*, 337 Mass. 552, 557 (1958) (right of way extinguished by outhouse "as well as by the planting and growth of . . . bushes placed on the right of way"). *Yagjian* v. *O'Brien*, 19 Mass. App. Ct.

---

[7] Part of that time it was owned by his widow.

733, 737 (1985) (fencing). See also *New England Home for Deaf Mutes* v. *Leader Filling Stations Corp.*, 276 Mass. 153, 159 (1931) (petitioner had erected and maintained structures and "pursued a course of conduct with the deliberate design of excluding everybody . . . from entering upon the land in question" and succeeded in that course). *Delconte* v. *Salloum*, 336 Mass. 184, 190 (1957). Compare *Patterson* v. *Simonds*, 324 Mass. 344, 350-353 (1949). See generally 2 American Law of Property § 8.102 (Casner ed. 1952).

The other portion of the easement over Neptune Street which the judge found extinguished by adverse use was an area called the "jog." For nineteen years, from 1961 to 1980,[8] the jog area was used by the Auerbachs for a fence and shrubs which surrounded their swimming pool. Although the judge incorrectly found that the area had been fenced since 1947, he made other findings which are supported by the evidence. A large tree occupied the area and, beginning in 1947, Auerbach treated the jog as his own, cultivating the land and mowing the lawn as part of his yard. He ignored objections of the neighbors. Although a finding that the use had been adverse for more than twenty years was not required, we cannot say that it was clearly erroneous. We note that although the width of the easement in the two portions of Neptune Street has been narrowed by the judge's rulings, Burton has the right to traverse the whole length of Neptune Street from Atlantic Avenue to Ocean Spray Avenue and beyond.

2. *Staircase to beach embankment.* The judge's ruling that the defendant "ha[s] no rights of use in the existing stairway[] "[9] is more troublesome. This ruling forecloses her from access to the beach over Ocean Spray Avenue without building a staircase of her own. The judge's ruling must be considered in the context of the access rights to the beach of the respective parties, their rights in Ocean Spray Avenue, and their rights in the land between Ocean Spray Avenue and the ocean.

[8] In that year the Burtons brought an action in the Superior Court to preclude any loss of rights by prescription.

[9] The stairs in question were built by Auerbach and lead from the edge of the bluff down the bank to the top of a seawall, where there is a walkway to the beach.

In addition to her rights over Neptune Street, discussed in part 1 hereof, Burton also has rights in Ocean Spray Avenue and has a right of access to Rockaway Beach. These rights were derived from a deed granting the defendant's predecessors:

> "the right to use Neptune Street for all the purposes of a way and also a right of access to Rockaway Beach over Neptune Street, Ocean Spray Avenue and the land between the northerly bound of Ocean Spray Avenue [the bound closest to the plaintiffs' houses] and the Atlantic Ocean."

The judge ruled that Burton has rights of way in and to the whole of Ocean Spray Avenue and that no portion of these rights was extinguished.[10]

The Magraths and the Shapiros do not claim any farther than the midline of Ocean Spray Avenue as their southerly boundary, and the judge found that the Shapiros' predecessors had no additional title. Since the Shapiros' fee interest is only to midline of Ocean Spray Avenue, they, like Burton, have only rights of way in the other half of Ocean Spray Avenue and in the land between the avenue and the ocean. The judge's findings and the photographs show that the Auerbach stairway, which begins on the portion of Ocean Spray Avenue owned in fee by the Shapiros, descends over the land in which the Shapiros' rights are no greater than the defendant's.

In discussing the prior use of the Auerbach staircase, the judge found that a gate at the head of the stairs was kept locked by the Auerbachs but that Mrs. Auerbach provided keys to several of the neighbors so they could use the stairs. There was testimony that the purpose of locking the gate was to prevent accidents and to avoid liability. See *Stucchi* v. *Colonna,* 9 Mass. App. Ct. 851, 852 (1980), where it was held that the

---

[10] The petitions for confirmation and registration had sought to extinguish the defendant's rights in a portion of Ocean Spray Avenue, namely, a three-foot walkway in front of the plaintiffs' houses, but the judge found that her rights continued.

use of a locked gate was not an unreasonable interference with the easement holder's use where the latter was given a key and where the gate was a requirement of the insurer.

Sometime prior to the Auerbachs' building of the staircase, another staircase led to the beach at the end of the walkway over Neptune Street.[11] The judge found that the use of that staircase was never obstructed by the plaintiffs or their predecessors.[12] Compare *Texon, Inc.* v. *Holyoke Mach. Co.*, 8 Mass. App. Ct. 363, 365-366 (1979). He also determined that "a set of stairs is obviously necessary for the defendant[] to enjoy the access to the beach previously available to [her]," and ruled that the defendant "would not be foreclosed from rebuilding the stairs and assuming responsibility for them in the area opposite the 5 foot walkway in a manner commensurate with the stairs now found opposite the plaintiffs' homes."

The judge was correct in ruling that the plaintiffs have no duty to construct stairs to the beach for the use of the defendant. The duty of maintaining an easement in such condition and repair as may be necessary to its exercise normally rests upon the holder of the easement. See *New York Cent. R.R.* v. *Ayer*, 242 Mass. 69, 75 (1922).

The judge's further conclusion that the plaintiffs may exclude the defendant from the existing staircase does not necessarily follow. As indicated previously, the defendant has an easement throughout Ocean Spray Avenue and the land between the avenue and the ocean, and hence over the land where the stair-

---

[11] The prior owner of the Magraths' property testified that when he acquired the property in 1963 there was an unusable "rotted out" staircase at the end of Neptune Street. There was, however, no evidence when and by whom it had been used, and the judge's findings concerning use seem unsupported by the evidence. In any event, we do not construe the judge's finding that a prior staircase existed as a definitive ruling that the location of the defendant's access easement had become fixed or limited. See *Labounty* v. *Vickers*, 352 Mass. 337, 345 (1967).

[12] There is, however, evidence that the plaintiffs and their predecessors repaired the bank and the retaining walls. The record does not indicate whether these repairs affected the old staircase. The photographs suggest that because of the terrain of the bank, it may be difficult to build an additional staircase. See discussion in text, *infra*.

case is located. The judge made no finding, and there is no basis in the evidence for a finding, that exclusive access to Rockaway Beach should be at that location of the old staircase at the end of Neptune Street. Evidence as to the use of that staircase was minimal, and there was evidence that several of the owners of back parcels used the Auerbach stairs.[13] On this record, we think the judge had an insufficient factual basis to rule that the defendant had only the right to build a new staircase at the locus of the previously existing one.

It also appears from the configuration of the bank that building another staircase at a point across the walkway over Neptune Street would be expensive. In view of the erosion of the cliff, building another staircase might also entail some risk of damaging the bank. A solution which in practical effect, because of cost, cuts off Burton (and the other owners of the back property) from beach access does not at this juncture appear consistent with the defendant's easement.

Whether the defendant may use the Auerbach staircase requires a balancing of the interests of the plaintiffs and of Burton as the respective owners of the servient and dominant estates in the northerly portion of Ocean Spray Avenue and also a balancing of their interests as holders of an easement in common over the rest of the land on which the staircase is situated. Their uses of the land are governed by equitable principles, namely, what is reasonable in the exercise of their respective privileges. The benefits and convenience both to the defendant and the plaintiffs must be taken into acccount. See *Blais* v. *Clare,* 207 Mass. 67, 60-70 (1910); *Tehan* v. *Security Natl. Bank,* 340 Mass. 176, 186 (1959); *Western Mass. Elec. Co.* v. *Sambo's of Mass, Inc.,* 8 Mass. App. Ct. 815, 824-825 (1979); *Deery* v. *Foster,* 15 Mass. App. Ct. 564, 569 (1983). While in some circumstances it may be appropriate to limit Burton in the use of the staircase,[14] even though it is constructed

---

[13] There was also no evidence that any back owner who wanted a key was refused one while the Auerbachs were the owners of the parcel now owned by the Shapiros.

[14] It may be unreasonable to insist on such use if other access is reasonably available, or if the use results in the deterioration of the stairs and Burton

on land over which she has an easement (the whole of Ocean Spray Avenue), the record is insufficient to support the judge's prohibition as being reasonable here.

Additional evidence is required before an appropriate judgment can be framed and may entail such matters as the cost of maintaining the existing stairway, the need to protect against liability, see *Stucchi* v. *Colonna,* 9 Mass. App. Ct. at 852 (locked gate not unreasonable where required by the insurer; easement holder entitled, however, to a key), and how the costs should be equitably apportioned among the common easement owners. See *Barnard* v. *Gaumer,* 146 Colo. 409, 413-414 (1961); *Bina* v. *Bina,* 213 Iowa 432, 438-439 (1931); *Weil* v. *Atlantic Beach Holding Corp.,* 131 N.Y.S. 2d 225, 230 (Sup. Ct. 1954), modified, 285 A.D. 1080 (1955), modified 1 N.Y. 2d 20 (1956); *Lindhorst* v. *Wright,* 616 P.2d 450, 454-455 (Okla. Ct. App. 1980). If the parties choose, they may also show the feasibility, the cost, and the risks attendant to building another set of stairs at another location, for example, at the end of Neptune Street.

Evidence that the repairs to the bank may have made it more difficult to build a staircase may also be relevant. See note 12, *supra.* "The owner of property burdened by an easement whose use of that property impairs the rights of the holder of the easement may be . . . required to take measures at his expense to accommodate the easement holder's right of use." *Texon, Inc.* v. *Holyoke Mach. Co.,* 8 Mass. App. Ct. 363, 366 (1979). It may be that the reasonable actions of the plaintiffs in keeping the retaining wall in place led to a material increase in the cost to the defendant of exercising her rights. In balancing the corresponding benefits and conveniences of the parties, the judge may find it reasonable for the plaintiffs to contribute to the building of another staircase as an alternative to sharing the one already constructed.

---

will not contribute to the maintenance costs. Other situations may also exist where denial of use is appropriate. See, e.g., *Tehan* v. *Security Natl. Bank,* 340 Mass. at 183 (plaintiffs obstructing a passageway not entitled to equitable relief against a similar obstruction).

For the reasons set forth above, the judgment is affirmed insofar as it sets forth the rights of the parties in Neptune Street and Ocean Spray Avenue. The judgment insofar as it excludes the defendant from using the stairway is reversed, and the question of the defendant's means of access to the beach is remanded for further proceedings not inconsistent with this opinion. The judge in his or her discretion may permit any one or more of the original defendants (the other back parcel owners) to participate in the proceedings on remand so that the costs and benefits of any solution may be more equitably apportioned.

*So ordered.*