GILBERT J. PATTERSON *vs.* FRANK SIMONDS.

Plymouth. December 6, 1948. — June 6, 1949.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Way*, Private: extinguishment. *Adverse Possession and Prescription.*

An owner of land bounded by a way shared with the owner of adjoining land was not shown by findings of a master to have acquired by adverse use a right to use of the way for mossing to the exclusion and extinguishment of the rights of the adjoining owner where it appeared that use of the way by the first owner for mossing for over twenty years was not irreconcilable with the rights of the adjoining owner.

BILL IN EQUITY, filed in the Superior Court on June 12, 1947, and afterwards amended.

The suit was heard by *Smith*, J., upon a master's report.

*J. P. White*, for the plaintiff.

*W. F. Hallisey*, for the defendant.

SPALDING, J. The plaintiff by his bill as originally framed sought an adjudication that he had acquired title by adverse possession to a certain way adjoining his property, and asked that the defendant be enjoined from interfering with his right of possession or occupancy of the way. The case was referred, under the usual rule,[1] to a master who,

---

[1] See Rule 86 of the Superior Court (1932).

Patterson *v.* Simonds.

after hearing the parties, filed a report of his findings. He attached to the report, as a part thereof, a plan marked exhibit "B,", material features of which appear below.

These findings include the following: The plaintiff is the owner of lots 2, 3, and 4, shown on exhibit "B." He also owns the unnumbered triangular parcel opposite to and east of lots 4 and 5 and a portion of lot 6. All of these lots were originally owned by one Barker. The plaintiff's title to lot 2 derives by mesne conveyance from a deed in 1899 of Barker to one Fitts. The deed to Fitts referred to the lot as being shown as lot 2 on a plan then on record in the registry of deeds and stated that the lot was "bounded in the east by laid out way on said plan." The plan referred to in the deed shows only a small portion of the property included in exhibit "B," namely, lots 1, 2, 3, 4, 5, and 6, and the way which bounds it on the east. The plaintiff's title to lot 3 also derives by mesne conveyance from a deed in 1902 of Barker to Fitts which refers to the same plan mentioned in the earlier deed and describes the property as "lot number three" thereon. The plaintiff's title to lot 4 stems from a deed in 1905 of Barker to the plaintiff's mother. Following the description, which stated that the property was bounded "easterly by a way," the deed recites, "with the right and privilege to lay water pipes and other improvements and the rights to pass and repass with team or otherwise across the land of the grantor to the highway and the sea in said way."

Since December 26, 1946, the defendant and his wife have been the owners of lots 5 and 6 as tenants by the entirety. Title to each lot was derived by mesne conveyances from deeds of Barker respectively to one Lynde in 1899 and to one Belcher in 1905. The deed of lot 5 to Lynde referred to the property as lot 5 on a plan to be filed (presumably the plan mentioned above), and described the easterly boundary as "beginning at southeasterly corner of said lot on laid out way of said plan: thence northerly and westerly 50 feet to corner of lot No. 6 on said plan." The deed of lot 6 to Belcher, after referring to the plan and describing the property with reference to the plan and the way shown thereon, recited, "with the right and privilege to pass and repass with team or otherwise in the private way lying on the

easterly side of said land and the right to lay water pipes and other improvements for the use of said lot."

"It will be observed that three of the above mentioned deeds, namely the deeds to lots 2, 3, and 5, did not specify the nature of the rights, if any, intended to be granted in the unnamed way. However, each of the lots conveyed was bounded by said way and one of the lots, comprising respectively the estates of the plaintiff and the defendant, contained specific words of grant and I have assumed, in making this report, that each of said deeds conveyed at least a right to pass and repass with a team or otherwise over the entire extent of the unnamed way."

All of the lots shown on exhibit "B," with an exception presently to be mentioned, were formerly owned by Barker. At all times here material Jericho Road, Turner Road, and Scituate Avenue were public streets. Meadow Road, Otis Road and their connecting way, as shown on exhibit "B," were never constructed and never had any actual existence or use as streets or ways. The area comprising lots 68 to 85 on exhibit "B" was never improved and consists in part of meadowland and marshland. The southerly boundary of Barker's property extended westerly from the corner of Turner Road and Jericho Road as shown on exhibit "B." Barker never owned the unnumbered triangular area which lay between his southerly boundary and Jericho Road.

In 1899 Barker subdivided and offered for sale lots numbered 1 to 6 shown on exhibit "B," and laid out the thirty-five foot unnamed way shown thereon extending along the entire easterly frontage of the lots. "I find that Barker's purpose and intention in so doing was to enable people who would buy said lots to acquire a right of way to a public street, and that an easement to Scituate Avenue or Turner Road over some part of Barker's adjoining land was thereby created." The master concluded that since Barker owned no land to the south of the way he "probably intended that people would enter and leave lots 1 to 6 by means of the way extended to Scituate Avenue." In fact such route

to Scituate Avenue was never used and Barker later sold all of his land between the northerly end of the way and Scituate Avenue. He also sold all of the lots on Turner Road. Since some of these lots are not occupied, they afford an easy means for persons living on lots 1 to 6 to get to Turner Road. For approximately forty-eight years the owners of lots 1 to 6, or some of them, have passed along the northerly boundary of the area on exhibit "B" designated "Town of Scituate parking space." Such route consists of a well travelled way capable of use by pedestrians or vehicles. The town of Scituate purchased this property seven years ago and has erected a fence and constructed a parking yard; but the route mentioned above has not been interfered with so that "this method of egress from and ingress to the unnamed way is now physically available and is used . . . but it may be that the town will seek to close it." "There is nothing in the record title to the parking space giving anyone any right to use any part of it as a way and it is not shown as a way or street on any plan." [1]

Concerning other means of access to public ways the master found that the owners of lots 1 to 6, by reason of a plan filed in the town engineer's office by Barker in 1911 showing Otis and Meadow roads, had a right of way over these roads (if and when constructed) to reach Scituate Avenue and Jericho Road; that title to this property was in the heirs of Barker; and that while its commercial value was small the cost of connecting even one of the roads with a public way would be substantial.

Since 1946 when he acquired title to lots 5 and 6 the defendant has been going to and from Turner Road over lots 38 and 39, but Thornton, the owner of these lots, has objected to such use. Inasmuch as the area comprising the way in front of lots 1 to 6 consists of sand and would have to be surfaced with gravel or some other material to make it

---

[1] The master in his second report, hereinafter discussed, found that on January 29, 1948, the selectmen of the town of Scituate voted to place a fence on the parking space which, if erected, would block off the route or way along the northerly boundary of the parking space. He made no finding as to whether the town had a right to close the route.

suitable for use by vehicles or even pedestrians, the defendant in the spring of 1947 sought the plaintiff's permission to make a gravel surface, twelve to fifteen feet in width, from his property over the way in front of lot 4 and part of lot 3 to connect with the road in the "Town of Scituate parking space" leading to Turner Road, but permission to do this was refused, the plaintiff claiming that he had acquired title to the entire way in front of lots 2, 3, and 4 by adverse possession.

After having found the foregoing facts, the master then considered the issue of adverse possession and found the following facts: During each year since 1910 the plaintiff used all of the way in front of lots 2, 3, and 4 for the purpose of "mossing." "Mossing" is a seasonal occupation in that it can only be done from about May to October, or, at most, a little longer. It involves collecting sea moss which is then spread out on beds, so called, of clean sand where, after it has been bleached, treated with salt water and dried, it is baled and sold for commercial purposes. The moss beds are rectangular and run from about fifteen to twenty feet on a side, leaving lanes or paths for the use of the "mossers" in tending their beds. "For several years before 1910 the plaintiff's father mossed on the same locus," pursuant to an oral permission granted by Barker. From 1910 until at least 1923 both the plaintiff and his father "mossed" in the area in question, and the plaintiff has continued to "moss" since 1923. During this entire period nothing was done by anyone in the way of surfacing the area. Indeed, to have done so would probably have rendered it unfit for "mossing." "Until recently, the plaintiff expressed no claim of title in the locus by word of mouth or in writing. He simply used it. On the other hand, no one objected to his doing so. Likewise, during said period neither the plaintiff nor anyone else posted any 'No Trespass' signs nor were any fences or obstructions erected to keep people off the premises. It is, and always was, physically possible for people to walk from Jericho Road into and along the . . . [way] and from there out into Turner

Road over lot 39 or 40 or thereabouts." There was some foot traffic over the way in both directions but the extent of it could not be ascertained. Those using the way during the "mossing" season would pass and repass over the paths between the moss beds, and the plaintiff did not object. From these facts the master concluded that the "plaintiff's use was open and actual, but that it was not sufficiently adverse and did not constitute such exclusive possession under claim of a fee as to become the basis of a title by adverse possession."

At about the time the master had prepared his report the plaintiff was allowed to amend his bill alleging that he had acquired a right by prescription to use the way in question for the purpose of drying and making moss, without interference by the defendant. The defendant answered to the amended bill, and an interlocutory decree was entered ordering that the case be recommitted to the master to report on the issues raised by the amendment.

A summary of the master's findings on these issues is as follows: For more than twenty years, during the winter months when "mossing" was not possible, the plaintiff used the way in front of lots 2, 3, and 4 for the purpose of storing boats, moss tubs, and other equipment. "From the foregoing, I would conclude that said winter use coupled with the mossing activities referred to in my first report was adequate as a matter of law to constitute a continuous user." In view of the fact that the plaintiff owns lots 2, 3, and 4 and the triangular area north of the parking space and opposite lots 4, 5, and 6, he "owns the fee of the westerly half of said way in front of lots 2 and 3, the fee of the entire way approximately in front of lot 4, and the fee of the easterly half of the way in front of lot 5 and a part of lot 6. . . . Since an easement is an interest in the land of another, he [the plaintiff] cannot have acquired any prescriptive rights in that part of said way of which he is the owner in fee." In conclusion the master states, "I believe that the question raised by the plaintiff's amended bill . . . is not whether the plaintiff has himself acquired the right which he claims

by prescription, but rather whether the easement in said way granted to the defendant's predecessor in title has, by reason of the plaintiff's use of the way, been extinguished. In this connection, I find that there has been no disuse of the way by the dominant owners for the statutory period, that the plaintiff's use of the way has not been inconsistent with the continuance and existence of said easement, and that the easement of the defendant in said way for the purposes specified in the original grant thereof is still in full force and effect."

After the master's second report was filed, the plaintiff moved for a recommittal for the purpose of having the master specify the evidence upon which he based his finding "that there had been no disuse of the southerly part of the . . . way for more than the statutory period." An interlocutory decree was entered denying the motion to recommit, overruling the plaintiff's exceptions to the reports, and confirming both reports. From this decree the plaintiff did not appeal. Thereafter a final decree was entered dismissing the bill, from which the plaintiff appealed.

There was no error in the denial of the plaintiff's motion to recommit the second report even if we go so far as to assume, but without deciding, that the point is now open on an appeal only from the final decree. See *Arey* v. *George Associates, Inc.* 299 Mass. 130, 132; G. L. (Ter. Ed.) c. 214, § 27. The plaintiff rightly does not argue that he was entitled to a summary of the evidence as of right under the provisions of the second sentence of the second paragraph of Rule 90 of the Superior Court (1932). It is apparent that the requirements of that rule relative to obtaining such a summary were not satisfied. See *New England Factors, Inc.* v. *Genstil,* 322 Mass. 36, 44, and cases cited. Whether the report should be recommitted rested, as the plaintiff concedes, in the sound discretion of the judge. *Pearson* v. *Mulloney,* 289 Mass. 508, 513. *George C. Miller & Co. Inc.* v. *Beagen,* 293 Mass. 54, 57. *Buckley* v. *John,* 314 Mass. 719, 725. *Minot* v. *Minot,* 319 Mass. 253, 258. There was no abuse of discretion.

On the merits we are of opinion that the plaintiff is not entitled to prevail. That the defendant had a general easement of way over the property in question is clearly established by the findings. We cannot agree with the plaintiff's contention that the easement was limited to a right to use the way only to go to and from the highway and the sea. No such limitation was contained in the original deed of lot 6. That deed granted in general terms "the right and privilege to pass and repass with team or otherwise in the private way lying on the easterly side of said land." And the deed of lot 5, although not containing a specific grant of an easement, described the property as bounded by the way and referred to a plan showing the way. "When a grantor conveys land bounding on a street or way, he and his heirs are estopped to deny the existence of such street or way, and the right thus acquired is not only coextensive with the land conveyed, but embraces the entire length of the way as it is then actually laid out or clearly indicated and prescribed." *Tobey* v. *Taunton*, 119 Mass. 404, 410. *Oldfield* v. *Smith*, 304 Mass. 590, 595–597. *Frawley* v. *Forrest*, 310 Mass. 446, 451. See *Downey* v. *H. P. Hood & Sons*, 203 Mass. 4; *Lagorio* v. *Lewenberg*, 226 Mass. 464, 466.

The pivotal question in the case is not whether the plaintiff obtained title to the way by adverse possession but whether, irrespective of the question of title, the defendant's easement was extinguished by adverse use on the part of the plaintiff. Doubtless the plaintiff could have used the way in a manner so inconsistent with the defendant's easement that it would work an extinguishment of it after the lapse of twenty years. But a use of the land by the servient tenant not irreconcilable with the rights of the dominant tenant is not deemed to be adverse and therefore would not extinguish such rights. *Arnold* v. *Stevens*, 24 Pick. 106. *Smith* v. *Langewald*, 140 Mass. 205, 207. *Butterfield* v. *Reed*, 160 Mass. 361, 369. *New England Home for Deaf Mutes* v. *Leader Filling Stations Corp.* 276 Mass. 153, 158. Restatement: Property, § 506, comment b. Tiffany, Real Property, (3d ed.) § 827. Here, on the findings of the master,

such use was not established. To be sure, the master found that the use of the way by the plaintiff for "mossing" during the summer months and for storage purposes during the remainder of the year constituted a continuous use of it by him for a period in excess of twenty years. But they also show that such use during that period was not an interference with or adverse to the rights of the defendant to any appreciable extent. The use of the way by the plaintiff was not incompatible with the rights of the defendant. See *Arnold* v. *Stevens*, 24 Pick. 106, 111. Throughout that period the way was not closed off by the plaintiff and use of it was not only always possible but was to some extent exercised. The ultimate finding of the master was that "the plaintiff's use of the way has not been inconsistent with the continuance and existence of . . . [the defendant's] easement." This finding is not vitiated by any of the subsidiary findings and must stand. *Norton* v. *Chioda*, 317 Mass. 446, 450.

It follows that the decree dismissing the bill was right. Let the entry be

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*