DAVID J. LEMIEUX & another[1] *vs.* REX LEATHER
FINISHING CORPORATION.

Essex.    March 20, 1979. — April 19, 1979.

Present: BROWN, GREANEY, & KASS, JJ.

*Way*, Private: extinguishment. *Easement*, Extinguishment. *Adverse Possession and Prescription.*

Findings by a master that a defendant had positioned gates at both ends of a way on which an easement was claimed by the plaintiffs but that the gates were left open during the day for vehicular and foot traffic, and that certain structures located within the way and the uses conducted by the defendant within the easement did not block its entire width but left a portion of it available for use by the plaintiffs and others did not establish that the uses relied upon by the defendant were so inconsistent or irreconcilable with the plaintiffs' rights as to cause a complete extinguishment of those rights. [421-424]

CIVIL ACTION commenced in the Superior Court on December 18, 1975.

The case was heard by *O'Connor, J.*, on a master's report.

*John S. Legasey* for the plaintiffs.

---

[1] John E. McAuley.

*John A. McNiff* for the defendant.

GREANEY, J. The plaintiffs, owners of a parcel of back land at 119 Foster Street in Peabody, sought an injunction and damages in the Superior Court against the defendant, the owner of land fronting on Foster Street, for the obstruction of the plaintiffs' twenty foot right of way to Foster Street.[2] By agreement of the parties, the case was referred to a master, Mass.R.Civ.P. 53(b), 365 Mass. 818 (1974), who concluded that ten feet of the plaintiffs' right of way had been extinguished along its entire length by various prescriptive uses of the defendant and its predecessors in title and that the remainder of the way was open for emergency use only. A judge of the Superior Court modified the master's conclusions, and ruled that the entire right of way had been extinguished by prescriptive use. The judge adopted the report as modified, denied the relief sought, and entered a judgment dismissing the action. We reverse.

The master's report discloses all of the subsidiary facts the master had in mind and upon which his general findings were based. As a result, we, as did the court below, may draw further or different inferences from the master's subsidiary findings and reach our own general and ultimate conclusions. *Murray* v. *Bateman,* 315 Mass. 113, 117 (1943). *Samia* v. *Central Oil Co.,* 339 Mass. 101, 122 (1959). *O'Brien* v. *Dwight,* 363 Mass. 256, 281-282 (1973). *Bills* v. *Nunno,* 4 Mass. App. Ct. 279, 283 (1976). *McNamara* v. *Westview Bldg. Corp.,* 4 Mass. App. Ct. 670 (1976). We summarize the master's subsidiary findings in light of these principles.

The right of way in issue had its genesis in 1844, when one Barnard conveyed a portion of his land to Little, reserving in the deed "the right to use the way over the dam." The defendant is the current owner of the Little

---

[2] The location of the right of way in issue, the parcels of land owned by the parties, and the other ways and parcels discussed in this opinion are all shown on the diagram attached as Appendix A.

property, while the parcel owned by the plaintiffs derives out of the Barnard property. Later in 1844, Barnard conveyed property to Blaney. Blaney and Little then entered into an agreement, twice recorded in the Essex South District registry of deeds, which provided that the right of way is "to be the common property, and for the common use and benefit of the parties herein named, their respective heirs and assigns forever."[3] Various specific and general references to this right of way can be found in the relevant conveyances in both the plaintiffs' and defendant's chains of title.

There was no evidence presented as to use of the right of way during a period from 1844 to 1909, when the Naumkeag Steam Cotton Company (Naumkeag) acquired the benefited property.[4] Naumkeag, for the express purpose of keeping its rights in the easement alive, annually or periodically ran a vehicle over the way until its plant was closed in 1950. In 1953 Naumkeag conveyed a portion of its land to the plaintiffs' immediate predecessor in title, John B. Coyne, who conducted a business at the site. Coyne's employees serviced the two businesses then located on either side of the right of way, Verza Tanning Company (Verza) and Carr Leather Company (Carr), by use of the right of way. Carr and Verza were the defendant's

---

[3] In later deeds the right of way was referred to as "the right to use, in common with . . . others entitled, the way marked 'existing right of way' [on a specified plan]." Despite the language contained in the agreement the language in the subsequent conveyances makes it clear that a tenancy in common was not created. In addition to the way in issue, the plaintiffs have a right of way over the Concrete Drive which was not contested in these proceedings. The right of way over the Concrete Drive is shown on Appendix A and includes all three passages denominated as "Right of Way Concrete Drive."

[4] There could be no claim that the right of way was extinguished during this period since "[t]he burden was on the [defendant] to establish any rights founded upon adverse user," and a lack of evidence in this regard will not establish such adverse use. *Albano* v. *Puopolo*, 309 Mass. 501, 506-507 (1941), and cases cited.

immediate predecessors in title.[5] By 1948 or 1949 the defendant's predecessors in title had installed gates at both ends of the right of way, one at Foster Street and the other at the juncture of the easement with the Concrete Drive. The gates were kept locked from approximately 6:00 P.M. to 7:00 A.M. each day but were left open during the day to leave the right of way accessible for business purposes. Besides this commercial use by Coyne's employees, which ceased in the late 1960s, occasional vehicles have continued to use the right of way when the Concrete Drive is blocked by trucks, accumulations of snow or other obstructions.

In addition to the presence of the gates the master found several other adverse uses within a portion of the way. He found that telephone poles and electric transformers had been constructed within the easement and that Carr had built permanent loading platforms that "projected into the right of way by at least five or six feet." Stairways and entries were present that extended "three or four feet" into the alley, and hides and other leather by-products were disposed of in the way by the leather businesses and removed periodically by forklift. Also "during the twenty-year period . . . leather goods on wooden horses were stacked in the alley . . . [and] the horses and leather scraps took up approximately half of the alley." The master found the presence of structures and business uses in the way for more than twenty years, that the uses were open and adverse, and that the uses took up approximately one half of the width of the right of way, or ten feet, along its entire length. Based on these subsidiary findings the master concluded that the "easement has been partially extinguished. . . . The easement as it exists today is approximately ten feet in width, one motor vehicle [in] width, and would not permit traffic in both directions . . . [T]he easement . . . could not be relied upon as a right of way at all times . . . . Therefor, I find

---

[5] The Carr and Verza properties are now owned by the defendant and are positioned on both sides of the right of way.

that the right of way should be opened to allow emergency traffic when Bleachery Street, i.e., Concrete Drive . . . does not permit passage."

The plaintiffs now concede that the master's findings support the conclusion that there has been an extinguishment by prescriptive use of part of their rights in the way. Accordingly, we confine our discussion to the sole issue whether the judge was correct in concluding, contrary to the master's general finding, that the plaintiffs' rights in the easement had been totally extinguished. We hold that this ruling was incorrect.

It is apparent from the master's findings that the plaintiffs' right of way had been used infrequently since 1909. But this alone would not be enough to extinguish the easement since it is axiomatic that "[m]ere non-user does not conclusively impair or defeat an easement created by deed." *Willets* v. *Langhaar,* 212 Mass. 573, 575 (1912). *Dubinsky* v. *Cama,* 261 Mass. 47, 57 (1927). *Pappas* v. *Maxwell,* 337 Mass. 552, 557 (1958). Restatement of Property § 504, Comment d (1944) ("Non-use does not of itself produce an abandonment no matter how long continued"). Nor could the defendant claim that there had been an abandonment of the plaintiffs' rights in the easement on the facts found by the master without some unequivocal "acts of the [plaintiffs] or their predecessors in title manifesting a design to relinquish their rights of way." *Dubinsky* v. *Cama, supra* at 57. Restatement of Property § 504, Comments c and e (1944). The plaintiffs' predecessors manifested a clear intention not to abandon the easement, as indicated by the symbolic act of Naumkeag's representatives in driving a vehicle over the way at least once a year in order to preserve rights in the easement, by Coyne's employees' utilization of the way to service Carr and Verza, and by the use of the way by vehicles when the preferred source of access, the Concrete Drive, was blocked.

Without a finding of an intent to abandon a recorded easement so as to work an extinguishment "there must

be an element of adverse use by the owner of the servient estate inconsistent with the continuance of the easement . . ." (*Willets* v. *Langhaar, supra* at 575) or a use "which would be privileged if, and only if, the easement did not exist" and such use is both "adverse as to the owner of the easement and . . ., for the period of prescription,[6] continuous and uninterrupted." Restatement of Property § 506 (1944).

The owner of the servient tenement, here the defendant, had the burden of establishing the necessary adverse use for the requisite period of time. There will be factual differences in the type of use which will extinguish an easement as compared to the type of conduct which will create rights by prescription. "The conduct which may operate to extinguish an easement by prescription differs markedly in one respect from conduct by which an easement is acquired. An easement is acquired by prescription through the use of land in the possession of another. An easement is extinguished by prescription through a use made by the possessor of a servient tenement of land in his own possession." Restatement of Property § 506, Comment b (1944). Thus, by way of example, driving a vehicle over another's property for a period of twenty years could establish an easement by prescription, Restatement of Property § 457 (1944), while driving the same vehicle on one's own property but through an easement shared with a neighbor would not extinguish the neighbor's right to drive his vehicle through the same easement unless the acts were at complete variance with the neighbor's rights. See Easements—Extinguishment by Adverse Possession of Servient Owner—Character of Acts Necessary, 33 Mich. L. Rev. 1270 (1935). The princi-

---

[6] The period of time over which adverse use must be exercised so as to extinguish an easement is the same period as that required to establish a right by prescription—twenty years. See G. L. c. 187, § 2; Restatement of Property § 506, Comment e (1944). See also *Patterson* v. *Simonds*, 324 Mass. 344, 352 (1949); *Desotell* v. *Szczygiel*, 338 Mass. 153, 159 (1958).

ple, admittedly abstract, has been stated in this fashion: the "occupation of land by the servient tenant not irreconcilable with the rights of the dominant tenant is not deemed to be adverse and therefore does not extinguish such rights." *New England Home for Deaf Mutes* v. *Leader Filling Stations Corp.*, 276 Mass. 153, 158 (1931). *Patterson* v. *Simonds*, 324 Mass. 344, 352 (1949). Accordingly, to establish adverse use in this case the defendant was required to establish that it, or its predecessors, had "used the way in a manner so inconsistent with the [plaintiffs'] easement that it . . . [worked] an extinguishment of it after the lapse of twenty years." *Id.* at 352. We are of the opinion that the master's findings do not support the conclusion that the uses relied upon by the defendant were so inconsistent or irreconcilable with the plaintiffs' rights as to cause a complete extinguishment of those rights. In our view the gates positioned at both ends of the way, perhaps the most significant gesture of adverse use, did not provide the required inconsistency since they left the way available for use during the day by foot[7] or vehicular traffic. Moreover, the structures located within the way, and the uses conducted within the easement, did not block its entire width but rather left a portion of the way available for use by the plaintiffs and others. At the most, the construction and use of permanent structures within the way for the prescriptive period pointed only to a partial extinguishment of the easement.[8] "Where, as here, such acts of the servient tenant render the use of only part of a right of way impossible, the easement is extinguished only as to that part."

---

[7] One deed in the plaintiffs' chain of title describes the plaintiffs' rights in the way in terms of rights of foot passage as well as passage by vehicles.

[8] We place little reliance on the fact that nonpermanent structures and uses such as the storage of scrap leather and wooden saw horses were present in the alley over a twenty-year period. It is dubious whether such uses in and of themselves could provide the required inconsistent use by the servient tenant.

*Pappas* v. *Maxwell,* 337 Mass. at 557. Accord *Brooks* v. *West Boston Gas Co.,* 260 Mass. 407, 411 (1927). We conclude on the facts found by the master that the use of the plaintiffs' right of way "was not only . . . possible but was to some extent exercised" (*Patterson* v. *Simonds, supra* at 353) and, as a result, that the master's subsidiary findings lead to the conclusion that the defendant has failed to satisfy its burden of establishing an extinguishment of the entire right of way. Finally, it was error for the master to conclude that the plaintiffs could use the easement only in emergencies. The grant of the plaintiffs' rights in the way was general and unrestricted. Though the plaintiffs' rights in a portion of the way had been extinguished, their rights in the remainder continue in force. Despite the fact that the way is used mainly for emergency access and egress the plaintiffs continue to have full use of the remaining part of the way for all purposes consistent with the reservation.

Accordingly, the judgment is vacated. The case is remanded to the Superior Court for the formulation of a conveyancer's description of the remaining portion of the right of way, and for the fashioning of appropriate relief for the plaintiffs, after which a new judgment is to be entered precisely describing the remainder of the way, ruling that the plaintiffs continue to have the right to use it for all purposes consistent with its grant, and awarding appropriate relief.

*So ordered.*