Giles, J.
The parties in this case own adjoining property on East Brookline Street, Boston, Massachusetts. The plaintiffs own a vacant lot at 70 East Brookline; and the defendants purchased the 72 East Brookline Street property in April 1997. In July 1997, the City of Boston determined that the defendants’ structure required urgent repair work to the sidewall facing the plaintiffs’ lot due to leaning of the wall. The City issued a building permit for the emergency repairs, and the defendants repaired the wall. As a result of the sidewall leaning and its repair, there exists today an encroachment on the plaintiffs’ property of between seven and eight inches. The plaintiffs seek equitable relief to compel removal of this encroachment. The defendants maintain that the encroachment is the result of repairs to a party wall and, further, that these repairs were necessitated by the removal of a building by plaintiffs’ predecessor in title causing a lack of lateral support to defendants’ structure. Both parties seek summary judgment. For the reasons set forth below, the plaintiffs’ motion for summary judgment is allowed and the defendants’ motion is denied.
BACKGROUND
Except where noted, the following facts are not disputed. The plaintiffs, Vladimir Pave and Peter Zagorianakos, as trustees of Knoll Realty Trust, own a vacant lot at 70 East Brookline Street in Boston. The lot measures 2,060 square feet. The defendants, Jeffrey Mills and Perry Stolberg, individually and as trustees of 72 East Brookline Street Realty Trust, purchased abutting property in April 199U
In 1958, the City of Boston ordered the plaintiffs’ predecessor in title to repair or raze the building located at 70 East Brookline Street. On October 19, 1959, the City issued a permit to take down the building and fill to grade. The building was razed. In 1960, the City found that the 72 East Brookline Street building’s left brick sidewall was six and one-half inches out of plumb and recommended wall ties be placed on the sidewall. The defendants purchased the 72 East Brookline Street property in April 1997; and in July 1997, the City ordered the defendants to perform emergency repairs to the sidewall.
The defendants repaired the side wall in the summer of 1997. They paid the plaintiffs $250.00 per month for the use of their property while the repairs were ongoing, that is, “to erect scaffolding and to excavate thereon.” (Defendants’ Statement of Evidence.) The parties agree that, based on an instrument survey, there is a consistent encroachment onto the plaintiffs property along the base of defendants' wall of between 7 and 8 inches. (Stipulation of Facts, 1118.) Also, the wall is bulging and leaning and is approximately 61/2 inches out of plumb, top to bottom, as one faces the building from East Brookline Street. (Stipulation of Facts, ¶19.) The plaintiffs further contend that there are two metal beams, 4 inches in depth, which are attached to the defendants’ wall to brace it up. As a result, the plaintiffs claim that the total encroachment onto their property, along various parts of defendants’ wall, is between 7[1]/2 to 18 inches, which will result in the loss of 360 square feet of net livable/sellable space or 7.5 per cent of the building they plan to erect on their lot.
The defendants maintain that both properties at issue here are encumbered by covenants and restrictions contained in the original deeds from the City of Boston in 1867-1868. On November 14, 1868, the City deeded to Aaron K. Sprague, the property now known as 70 East Brookline Street (today owned by the plaintiffs). The deed to Sprague contained the following provision reproduced in part:
So long as said lot remains unoccupied by a building to be used for a dwelling house as aforesaid, the said Sprague, his heirs and assigns, shall permit, free of charge, the proprietor of each adjoining lot who may build, to erect one half of the thickness of his division wall on said lot numbered one, and the said Sprague, his heirs and assigns, shall pay to the said proprietor so erecting said wall, a proportional part of the cost thereof for such part of said wall as he the said Sprague, his heirs or assigns, may use or occupy; and the said Sprague, his heirs and assigns shall when he erects or they erect a building as aforesaid on said lot numbered as aforesaid build one half of the thickness of his or their division wall on each adjoining lot which may be unoccupied by a dwelling house as aforesaid.
(Stipulation of Facts, ¶5.)
On December 14, 1867, the City of Boston had deeded to Alonzo Dexter the adjacent lot, now known as 72 East Brookline Street (today owned by the defendants). Dexter’s deed contained identical lan *414 guage as the deed from the City of Boston to Sprague. (Stipulation of Facts, ¶6.) In subsequent deeds through 1927, the grantors referred to the covenants and restrictions contained in the original 1868 deed. (Stipulation of Facts, ¶7.)
DISCUSSION
The court grants summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Id. at 716. When the non-moving party bears the burden of proof on an issue for which summary judgment is sought, that party must oppose the motion with admissible evidence on the issue in order to defeat the summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court finds that there is no genuine issue of material facts for trial in this case and, for the following reasons, that the plaintiffs’ motion for summary judgment should be allowed and the defendants’ cross motion for summary judgment should be denied. Thus, the defendants are required to remove the encroachment on the plaintiffs’ property.
The plaintiffs maintain that encroachment onto their property by the defendants’ sidewall is significant and that a landowner is entitled to mandatory equitable relief to compel removal of a structure significantly encroaching onto his land. Further, the plaintiffs claim that the defendants have no legal excuse for this encroachment. The defendants counter that, if any encroachment exists, it was caused by the defendants’ predecessor in title when they withdrew lateral support to their building.
The defendants’ lateral support argument relies on the so-called deed poll or covenants contained in the deed from the City to the initial purchasers of the properties. The deeds, the defendants claim, contain a party wall agreement whereby the owners agree to provide mutual easements of support; and such an agreement runs with the land. The defendants cite the following cases: Fleming v. Cohen, 186 Mass. 323 (1904); King v. Wright, 155 Mass. 444 (1892); Union Nat'l Bank of Lowell v. Nesmith, 238 Mass. 247 (1921). Since these decisions however, there have been a number of statutory enactments limiting impositions of restrictions on the use of land. General Laws c. 184, §23 provides in part: “Conditions or restrictions, unlimited as to time, by which the title or use of real property is affected, shall be limited to the term of thirty years after the date of the deed.” The statute did not apply to conditions or restrictions existing on July 16, 1887, but these have now been eliminated by G.L.c. 184, §28, which provides in part:
No restriction imposed before January 1,.. . [1962] shall be enforceable after the expiration of fifty years from its imposition unless a notice of restriction is recorded before the expiration of such fifty years or before January 1, . . . [1964], whichever is later, and in case of such recording, twenty years have not expired after the recording of any notice of restriction without the recording of a further notice of restriction.
Deed Restriction
A restriction on the use of land may be imposed by an easement, by an equitable servitude, or by a covenant running with the land. See e.g. Labounty v. Vickers, 352 Mass. 337, 347 (1967). Notwithstanding statutory limitations, there are certain deed restrictions, for example, affirmative easements, which do run with the land. An easement is a right of use over the property of another.[1] Negative easements[2] are subject to a 50-year life under G.L.c. 184, §28. See Labounty v. Vickers, 352 Mass. 337 (1967). Affirmative easements,[3] on the other hand, are not subject to statutory time limitations and are presumed to be perpetual. Id.
Party Wall
The defendants here argue that this provision in the deeds of their predecessors in title references a party wall and that “each owner has an equal right in the whole wall with the other, the right of support of a building by that of an adjoining owner being ordinarily reciprocal in nature, and an extension of the common-law doctrine forbidding an owner of land to withdraw its natural support from his neighbor.” (Defendants’ Proposed Conclusions of Law 116). A party wall is defined as a wall common to two adjoining buildings, in which the owners of the two buildings that share the wall have mutual easements of support. Chicago Title Ins. Co. v. Cambridge, 24 Mass.App.Ct. 285, 287 (1987), citing Philips v. Boardman, 4 Allen 147, 148-49 (1862); Everett v. Edwards, 149 Mass. 588 (1889); Normille v. Gill, 159 Mass. 427 (1893); Fleming v. Cohen, 186 Mass. 323, 326-27 (1904). A party wall is inherently vertical support. Chicago Title Ins. Co., 24 Mass.App.Ct. at 287. Under such circumstances, the parties would have mutual easements of support.
It is not clear, in the present case, that the drafters of the original deeds intended to create a party wall. See e.g., LaBounty, 352 Mass. at 344 (origin of an implied easement, whether by grant or reservation, must be found in the presumed intention of the parties, to be gathered by the language of the instruments when read in the light of the circumstances). There is no language referencing a mutual right of lateral support or reservation of right to enter upon the *415 premises of the other for alteration or repair in the deed covenant. See Fleming v. Cohen, 186 Mass. 323, 326 (1904) (however, “if each was seised of a moiety [half of anything] of the wall, and nothing more, and no right of support or shelter had been acquired, either could have taken down his house when he pleased without regard to the injury that he might thereby cause his neighbor’s property”); Bennett v. Sheinwald, 252 Mass. 23, 27 (1925) (reservation of right to enter and to remove or alter makes it obvious that the obligation to build, and the right of entry to remove, are covenants which run with the land).
If a party wall had been intended by the drafters of the original deeds, however, it would have created mutual covenants which run with each lot. King v. Wright, 155 Mass. 444, 446 (1992); Bennet, 252 Mass. at 27. Such cross easements do not extend beyond the party wall, so the owner of a building sharing a party wall may, after giving adequate notice and using reasonable care to protect the structural integrity of the party wall, and avoiding damage to the adjoining owner’s building, remove his building without liability to the adjoining owner. See e.g., Lambert v. City of Emporia, 616 P.2d 1080, 1081 (Kan.App. 1980) (holding this rule applies even though removal of the building leaves the party wall exposed or unsightly). The defendants in the present case rely on Suullivan v. Donahoe, 287 Mass. 265 (1934), which holds essentially the same as Lambert, supra, that the “defendants were entitled, notwithstanding the demolition of the plaintiffs building, to have the party wall remain for the support of their own.” Sullivan, 287 Mass. at 267. The Sullivan court held that, under the circumstances, the defendants were entitled to four inches of the plaintiffs’ property in order to make their wall safe; “the defendants, having a right to the wall, had a right to use the few additional inches of the plaintiffs’ land which were necessary to the enjoyment of that right.” Id. In the present case, however, even if the defendants are able to establish that the wall at issue was a party wall, that is, that a mutual easement for support was intended, it has been extinguished by prescription.
Extinguishment by Prescription
Just as easements maybe acquired by prescription, they may be extinguished by prescription. “An easement is acquired by prescription through the use of land in the possession of another. An easement is extinguished by prescription through use of land in one’s own possession.” Shapiro v. Burton, 23 Mass.App.Ct. 327, 330 (1987), quoting Lemieux v. Rex Leather Finishing Corp., 7 Mass.App.Ct. 417, 422 (1979). It is well settled that non-use does not work an abandonment of an easement. Brennan v. DeCosta, 24 Mass.App.Ct. 968, 969 (rescript) (1987), citing Desotell v. Szczygiel, 338 Mass. 153, 158 (1958); Lemieux v. Rex Leather Finishing Corp., 7 Mass.App.Ct. 417, 421-22 (1979). However, an easement maybe extinguished by adverse use.
The question then becomes whether the defendants’ easement was extinguished by adverse use on the part of the plaintiffs or the plaintiffs’ predecessor in title. I find that it has. By razing their building in 1959, which the defendants claim effectively removed half of the wall (i.e., defendants’ easement), the plaintiffs’ predecessor in title used the area “in a manner so inconsistent with the defendants’ easement that it would work as an extinguishment of it after the lapse of twenty years.” Patterson v. Simmonds, 324 Mass. 344, 352 (1949).
In order to establish acquisition through adverse possession of a fee encumbered by an easement in the disputed portion of plaintiffs’ lot, the plaintiffs must show occupation of the land irreconcilable with its use as a party wall, openly, notoriously, adversely, and without interruption for more than twenty years. Brennan, 24 Mass.App.Ct. at 969, citing Lemieux, 7 Mass.App.Ct. at 422-24; Yagjian v. O’Brien, 19 Mass.App.Ct. 733, 735-37 (1985). That is, there must be “an element of adverse use by the owner of the servient estate inconsistent with the continuance of the easement.” Lemieux, 7 Mass.App.Ct. at 422, quoting Willets v. Langhaar, 212 Mass. 573, 575 (1912). Stated another way, the plaintiffs continued a use “which would be privileged if, and only if, the easement did not exist” and such use was both “adverse as to the owner of the easement and ... for the period of prescription,[4] continuous and uninterrupted.” Lemieux, 7 Mass.App.Ct. at 422, quoting Yagjian, 19 Mass.App.Ct. 736; Restatement of Property §506 (1944). The parties agree that, in 1960, the City of Boston found the 72 East Brookline Street building to be some six and one-half inches out of plumb. Thus, it was apparent almost immediately after removal of his building that the plaintiffs’ predecessor in title used his property “in a manner so inconsistent with the defendants’ easement that it worked an extin-guishment of it after the lapse of twenty years.” Patterson, 324 Mass. at 352.
The owners of the servient estate, the plaintiffs in the present case, have the burden of establishing the necessary adverse use for twenty years. A use to have the effect of extinguishing an easement must be wrongful. Desotell, 338 Mass. at 159. “To be wrongful it must be of such a nature as to give rise to a cause of action in favor of the owner of the easement. As noted, to do this it must either interfere with a use under the easement or have such an appearance of permanency as to create a risk of development of doubt as to the continued existence of the easement. Id., quoting Delconte v. Salloum, 336 Mass. 184, 189, 1957, in turn quoting American Law of Property §8.102. See also Patterson, 324 Mass. at 352 and cases cited; Restatement.: Properly, §506, comment b.
In the instant case, when plaintiffs predecessor in title razed her building in 1959, it interfered with the use of the party wall and had such an appearance of *416 permanence as to create a risk of doubt as to the continued existence of the defendants’ easement. Desotell, 338 Mass. at 160. Thus, if the defendants’ predecessor in title had an affirmative easement on the plaintiffs’ property, it has been extinguished by prescription.
Defendants’ Claim of Easement by Prescription
The defendants claim that they have an easement by prescription over the plaintiffs’ land to the extent of the alleged encroachment. Because their building has been six and one-half inches out of plumb since 1959, they contend that they have met the requirements: non-permissive use which is actual, open, notorious, continuous, and adverse for twenty years. Ryan v. Stavros, 348 Mass. 251, 262 (1964), see also G.L.c. 260, §21 (1999 pocket part). In view of the evidence of almost four decades of open, uninterrupted, and notorious use of the area where the defendants’ wall leans and bulges onto the plaintiffs’ lot, a presumption arises that the use is adverse. Flynn v. Korsack, 343 Mass. 15, 18-19 (1961).
“The rule in Massachusetts is that whenever there has been the use of an easement for twenty years unexplained, it will be presumed to be under a claim of right and adverse, and will be sufficient to establish title by prescription . . . unless controlled or explained.” Id. at 18 (emphasis added). Of course, the presumption may be defeated; and, in this case, it is not clear that the defendants’ use was non-permissive and adverse. The defendants maintain that the leaning of the sidewall was caused by removal of lateral support by the plaintiffs’ predecessor in title. It is well established that “the possessor must use and enjoy the property continuously for the required period as the average owner would use it, without the consent of the true owner and therefore in actual hostility.” Ottavia v. Savarese, 338 Mass. 330, 333 (1959), citing The Am. Law of Property, §15.4, pp. 776-77 (1952). It is thus necessary to examine the “nature of the occupancy in relation to the character of the land.” Kendall v. Selvaggio, 413 Mass. 619, 624 (1992), citing Ryan, 348 Mass. at 262. In the circumstances here, by reason of the nature of the occupancy, the use could be considered permissive and not adverse.
Moreover, notwithstanding the bulging and leaning of the sidewall, it is not disputed that the defendants initiated repairs in the summer of 1997, which resulted in consistent encroachment along the base of the defendants’ wall of between 7 and 8 inches. The plaintiffs also claim that there are two metal beams, 4 inches in depth, which are attached to the defendants’ wall to brace it up. These intrusions have not been in place for the requisite twenty year period to establish title by prescription. Consequently, the court finds that the defendants have failed to sustain the burden of proof necessary to show the acquisition of an easement by prescription for the 1997 repairs. Accordingly, the intrusions made by the defendants in 1997 to repair the wall must be removed. Further, even if the defendants do have an easement by prescription over the plaintiffs’ lot for the six and one-half inches, which their wall has been out of plumb since 1959, they are still under an order to make their building safe, which they must do without encroaching on the plaintiffs’ land.
Encroachment
“It is commonplace today that property rights are not absolute, and that the law may condition their use and enjoyment so that the interests of the public in general or of some smaller segment of the public, perhaps even just immediate neighbors, are not unduly prejudiced.” Goulding v. Cook, 422 Mass. 276, 277 (1996). However, our courts draw the line at permanent physical occupations amounting to a transfer of a traditional estate in land except in “exceptional cases.” Id. at 277-289, citing Peters v. Archambault, 361 Mass. 91, 93 (1972). Indeed, under Massachusetts law, “a landowner is ordinarily entitled to mandatory equitable relief to compel removal of a structure significantly encroaching on his land, even though the encroachment was unintentional or negligent and the cost of removal is substantial in comparison to any injury suffered by the owner of the lot upon which the encroachment has taken place.” Capodilupo v. Vozzella, 46 Mass.App.Ct. 224, 226, review denied, 429 Mass. 1105 (1999), quoting Peters, 361 Mass. at 92. The question in the present case is whether any special circumstances exist to justify overriding the landowners’ ordinary entitlement to an injunction. See United States v. Grabler, 907 F.Sup. 499, 502 (D. Mass. 1995). The record here discloses no circumstances which would justify denial of a mandatory injunction for removal of an encroachment taking away approximately seven and one-half per cent of the plaintiffs’ lot. See Peters, 361 Mass. at 94 (holding that an encroachment taking away over nine percent of the plaintiffs lot was substantial and not de minimis).
In Capodilupo, supra, the court defined “exceptional cases” as one “where the unlawful encroachment has been made innocently, and the cost of removal by the defendant would be greatly disproportionate to the injury to the plaintiff from its continuation, or where the substantial rights of the owner may be protected without recourse to an injunction, or where an injunction would be oppressive and inequitable.” 46 Mass.App.Ct. at 226. The Capodilupo court cautioned, however, that “these are the exceptions,” and “(w]hat is just and equitable depends very much on the particular facts and circumstances disclosed.” Id., citing Goulding, 422 Mass. at 277 n. 3, in turn quoting Peters, 361 Mass. at 93.
Capodilupo is quite distinguishable from the case at bar. The defendant’s building at issue in Capodilupo had two brick corner walls which encroached upon an 11,878 square foot parcel belonging to the plaintiff. The first wall, 23.77 feet long, encroached increasingly *417 in taper from zero to 3.6 inches; the second, 8.38 feet long, consistently encroached 4.8 inches. The encroachments burdened a small open courtyard which the plaintiff uses to store trash. The plaintiff made no argument that the encroachment denied him in any way the beneficial use of his land. Further, the uncon-troverted evidence at trial was that removal of these walls would render the defendant’s building unsafe. The court held that, under the circumstances, where the encroachment is “trivial,” or de minimis, in nature, does not deprive the plaintiff of any use or enjoyment of his land; and where the grant of injunctive relief would be oppressive and inequitable, the defendant did not have to remove the encroachment. There are no such exceptional circumstances in the present case.
Here, the plaintiffs’ lot measures 2,060 square feet. The plaintiffs maintain that the total encroachment of the defendants’ wall on their property is between 7.5 and 18 inches, which deprives them of 360 square feet of net livable/sellable space or 7.5 per cent of the building which they plan to erect on the lot. This intrusion cannot be considered de minimis. Further, the record does not establish that the unlawful encroachment has been “made innocently, and the cost of removal by the defendants would be greatly disproportionate to the injury to the plaintiffs from its continuation.” Peters, 361 Mass. at 93.
Even if the defendants can show that their encroachment was made innocently and the cost of the removal would be greatly disproportionate to the injury to the plaintiffs from its continuation, our law does not sanction this type of private eminent domain. Goulding, 422 Mass. at 278. The fundamental aspect of ownership is that the owner of a thing has the right to prevent others from taking it from him, even if the takers are willing to pay damages. See Id. citing Kaplow & Shavell, Property Rules Versus Liability Rules: An Economic analysis, 109 Harv.L.Rev. 713, 758 (1996) (an analysis that comes to this same conclusion from a different perspective).
In Goulding v. Cook, supra, the parties owned neighboring residences. When the installation of another neighbor’s swimming pool resulted in malfunction of the Cook’s cesspool, they were forced to find an alternative system. The only suitable site was an approximately 3,000 square foot triangle of disputed land. After the Cooks installed their septic system on the triangle, the Land Court found ownership in the Gouldings but granted an easement to the Cooks for the maintenance of their septic system at a price to be negotiated by the parties. The Gouldings appealed, and the Appeals Court affirmed the Land Court decision. The Supreme Judicial Court, however, ordered the Cooks to remove the septic system and pay damages, reasoning that, “except in ‘exceptional cases,’ we draw the line at permanent physical occupations amounting to a transfer of a traditional estate in land.” Id. at 277-89, citing Peters, 361 Mass. at 93; Franchi v. Boulger, 12 Mass.App.Ct. 376, 379 (1981).
ORDER
It is therefore ORDERED that the plaintiffs’ motion for summary judgment be ALLLOWED and the defendants’ motion for summary judgment be DENIED. It is further ORDERED that the defendants directly commence removal of the portion of their structure which encroaches on the plaintiffs’ lot.

 Black’s Law Dictionary, 6th ed. 1991, p. 509.

 Negative easements are those where the owner of the servient [burdened] estate is prohibited from doing something otherwise lawful upon his estate, because it will affect the dominant estate (as interrupting the light and air from the latter by building on the former). Black's Law Dictionary, 6th ed. 1991, p. 510.

 An affirmative easement is one where the servient estate must permit something to be done thereon, as to pass over it, or to discharge water on it. Black's Law Dictionary, 6th ed. 1991, p. 510.

 “The period of time over which adverse use must be exercised so as to extinguish an easement is the same period as that required to establish a right of prescription-twenty years. See G.L.c. 187, §2; Restatement of Property §506, Comment e (1944). See also Petterson v. Simonds, 324 Mass. 344, 352; Desotell v. Szcygiel, 338 Mass. 153, 159 (1958).” Lemieux, 7 Mass.App.Ct. at n.6.