In these cross appeals, the plaintiff, Winsum Limited Partnership (Winsum), and the defendant, 17-33 Winter Street, LLC (Winter Street), appeal from a judgment issued by a judge of the Superior Court granting, in part, Winsum's motion for partial summary judgment. Winsum contends that the judge erred in concluding that its right to enforce a parking prohibition on the south side of Hamilton Place, a private way in Boston, has been extinguished by Winter Street's adverse use of six parking spaces for a period greater than twenty years. Winter Street maintains that any rights that Winsum had to enforce a parking ban on the whole of Hamilton Place were granted through a restriction that expired in 1980. We affirm.
1. Background. We briefly summarize the evidence presented to the judge on Winsum's motion for partial summary judgment. In 1950, Loew's Boston Theaters Company (Loew's) and The Boston Real Estate Trust (BRE Trust) entered into an indenture in which BRE Trust granted Loew's easement rights "to use [Hamilton] Place throughout its entire extent for purposes of travel on foot and with vehicles, and of light and air." In addition, the parties agreed that "[n]either party shall permit vehicles to stand in Hamilton Place longer than necessary for loading and unloading." In 1994, Winsum acquired and became successor in interest to Loew's interest. In 2007, Winter Street acquired and became successor in interest to the Janelon Trust's (Janelon) interest, which had acquired its interest from BRE Trust. Both Winsum and Winter Street became bound to the rights identified in the 1950 indenture.
Winsum's property presently houses the Orpheum Theatre and The Corner Mall, a twenty-tenant enclosed retail mall. Hamilton Place, which extends from Tremont Street, is the main access point to the Orpheum Theatre as well as a second access point to The Corner Mall. Members of the public use Hamilton Place to access both locations.
Since at least 1979, Janelon employees parked cars in six parking spaces on the south side of Hamilton Place-in direct conflict with Winsum's rights established in the indenture. In addition, any vehicle parked without Janelon's permission was towed.[2] Janelon did not receive any complaints about the use of the parking spaces. Janelon used the spaces on a daily basis for itself and its guests from the time it acquired the property until it sold the property to Winter Street in 2007. Winsum's agent, Thomas Frawley,[3] submitted an affidavit dated January 2016, asserting, however, that "[r]ecently, Winter Street or its agents have allowed parking in Hamilton Place."
In 2015, the board of appeal of Boston (board) granted Winter Street a variance permitting three food trucks to use the north side of Hamilton Place (as opposed to the south side where Winter Street used the six parking spaces). Subsequently, Winsum brought the present action in the Superior Court, appealing the board's decision granting the variance and seeking declaratory relief to determine the parties' rights in Hamilton Place. The Superior Court judge allowed, in part, Winsum's motion for partial summary judgment. Separate and final judgment then entered pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974). These cross appeals ensued.
2. Standard of review. "We review a grant of summary judgment de novo, construing all facts in favor of the nonmoving party." Miller v. Cotter, 448 Mass. 671, 676 (2007). Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Community Natl. Bank v. Dawes, 369 Mass. 550, 553 (1976). If the moving party asserts the absence of any triable issue, the nonmoving party "must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion." Drakopoulos v. U.S. Bank Natl. Assn., 465 Mass. 775, 778 (2013) (quotation omitted). "[C]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." O'Rourke v. Hunter, 446 Mass. 814, 821 (2006) (quotation omitted). See Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974).
3. Discussion. a. Applicability of G. L. c. 184, § 23. Winter Street contends that the judge erred in concluding that the parking prohibition in the indenture was a feature of the affirmative easement not subject to the thirty-year limitation for restrictions set forth in G. L. c. 184, § 23. It maintains that Winsum no longer has the right to enforce the parking prohibition anywhere on Hamilton Place because the rights conferred in the indenture should be classified as a restriction that expired in 1980, thirty years after it was signed. We disagree.
"A restriction on the use of land is a right to compel the person entitled to possession of the land not to use it in specified ways." Patterson v. Paul, 448 Mass. 658, 662 (2007) (quotation omitted). Restrictions on land are generally disfavored. See ibid. Conversely, "[a]n affirmative easement 'creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement.' " Id. at 663, quoting from Restatement (Third) of Property (Servitudes) § 1.2 (2000). "[A]ffirmative easement[s] allow[ ] easement owner[s] to enter [the] servient estate and do acts thereon." Ibid.
Here, the indenture is replete with affirmative easement rights that BRE Trust and Loew's granted to each other.[4] Section 4 of the indenture gives Winsum the right "to use [Hamilton] Place throughout its entire extent for purposes of travel on foot and with vehicles, and of light and air." It also prohibits both parties from allowing "vehicles to stand in Hamilton Place longer than necessary for loading and unloading." The indenture specifically confers on Winsum the right to enter and use land in the possession of another, and preserves the right to pass along the entire way, free of obstacles, except for temporary parking. This right was of value given the nature of the commercial operations, which included a theater. The rights identified in the indenture are properly classified as an affirmative easement. See Patterson, supra at 664.[5] Cf. Labounty v. Vickers, 352 Mass. 337, 347-348 (1967) ("A restriction on the use of land is a right to compel the person entitled to possession of the land not to use it in specified ways.... But the holder of such a restrictive right has no right to use the land on which he holds the restriction as he would if he held an affirmative easement" [quotation omitted] ). As a matter of law, the judge correctly determined that Winsum holds an affirmative easement and thus its rights established in the indenture are not subject to the thirty-year limitation set forth in G. L. c. 184, § 23.
b. Adverse use. Winsum contends that the judge erred in determining that its right to enforce its affirmative easement, as it relates to the parking proviso on the south side of Hamilton Place, has been extinguished.
In order to extinguish an easement there must be occupation of the easement that is irreconcilable with its use as a way. The use must be open, notorious, adverse, and without interruption for more than twenty years. Brennan v. DeCosta, 24 Mass. App. Ct. 968, 969 (1987), citing Lemieux v. Rex Leather Finishing Corp., 7 Mass. App. Ct. 417, 422-424 (1979). Here, Winter Street produced evidence that cars parked in the parking spaces on the south side of Hamilton Place for a period greater than twenty years, contrary to the provision of the indenture which prohibited "vehicles to stand in Hamilton Place longer than necessary for loading and unloading."
Winter Street provided affidavits that its immediate predecessor, Janelon, used the south side of Hamilton Place for parking between 1979 and either 2007 or 2012.[6] In addition, the affidavit of Janelon's property manager, Judee Shupe,[7] stated that Janelon maintained the six parking spots and only people authorized by Janelon were allowed to park in the spots. This evidence satisfied Winter Street's burden to show, on summary judgment, that its use of the parking spaces was continuous, adverse, open, and notorious.[8] See Brennan, supra. Furthermore, Winter Street provided evidence that it had used the south side of Hamilton Place "in a manner so inconsistent with [the rights provided in the indenture]." Lemieux, supra at 423 (quotation omitted).
Nonetheless, Winsum claims that the affidavit of its agent, Frawley, creates a dispute of material fact as to whether Winter Street satisfied the twenty-year period necessary for adverse use. The Frawley affidavit states that "[r]ecently, Winter Street or its agents have allowed parking in Hamilton Place." The affidavit not does raise a dispute of material fact because it fails to challenge the evidence of adverse, exclusive, and continuous use beginning in 1979. See Dawes, 369 Mass. at 555-556 ("vague and general allegations of expected proof" are not enough to defeat motion for summary judgment [quotation omitted] ). In light of the evidence submitted by Winter Street that Janelon continuously used the south side of Hamilton Place for automobile parking for a period greater than twenty years, some specific factual averments were necessary to raise an issue of material fact. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 559-560. Partial summary judgment in favor of Winter Street extinguishing so much of the affirmative easement that precluded the parking of automobiles on the south side of Hamilton Place was proper.[9] ,[10]
c. Modification of the judgment. The final judgment states that the "parking prohibition in Section 4 of the 1950 Indenture Agreement has been extinguished with respect only to the parking of six automobiles along the southerly side of Hamilton Place." Winter Street contends that the judge abused her discretion by declining to amend the final judgment to refer more liberally to "vehicles," rather than automobiles, to avoid potential ambiguity.[11] The judge concluded that the judgment, as entered, "accurately states the findings of the Court." After careful review of the record, the evidence shows that the six parking spaces were predominantly used to park automobiles. The judge properly limited Winsum's affirmative easement in accordance with Winter Street's use. We discern no abuse of discretion.
Judgment affirmed.

Janelon, for a fee, gave Live Nation, a booking agent that booked acts for the Orpheum Theatre, a Winsum tenant, permission to use the parking spaces for tour buses, vans, and trucks to unload equipment.

Frawley's responsibilities as an agent of Winsum included the day-to-day oversight of the property at issue for the past thirty-one years.

For example, in section 2 of the indenture, Loew's grants to BRE Trust "common rights in Music Hall Place," including the right to "install, maintain and use connections" with various utilities. In section 3, BRE Trust grants to Loew's "the common ... right to use for travel on foot only, the area between Music Hall Place and the south-east wall of the building known as 17-19 Winter Street."

Based on the language of the indenture, Winter Street's suggestion that portions of the indenture were easements while the parking prohibition was a restriction is not consistent with a reading of the document as a whole. See Sheftel v. Lebel, 44 Mass. App. Ct. 175, 182 n.8 (1998) (language in indenture "cannot be read in isolation ... but must be read in its proper context, as part of the instrument as a whole").

Although Winsum moved for partial summary judgment, the judge granted partial summary judgment in favor of Winter Street, as she was permitted to do. See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). For this reason, we review the entry of summary judgment as if Winter Street was the moving party.

Shupe stated in her affidavit that she was the property manager of Janelon between 1979 and 2007 and "worked there 5-6 days a week during [that] time period."

Winsum contests that Winter Street's use was neither "exclusive" nor "uninterrupted" as Live Nation used the parking spaces when there were shows at the Orpheum Theatre. This argument is unavailing for two reasons. First, the Cinelli affidavit states that "when the Orpheum Theatre had shows or concerts, it would pay a fee to [Winter Street] to park buses, trucks and other motor vehicles." Even if Live Nation used the parking spots, it did so with the permission of Winter Street. Second, the affidavits state that Live Nation has used the parking spots since 2004. By that time Winter Street had already established its adverse use for more than twenty years.

The partial extinguishment of its easement as it pertains to the south side of Hamilton Place does not extinguish Winsum's easement as it relates to the northerly side of Hamilton Place. See Post v. McHugh, 76 Mass. App. Ct. 200, 205 (2010) (partial adverse use can extinguish easement to extent of such use).

Having determined that Winsum's easement has been partially extinguished due to Winter Street's adverse use, we decline to address the abandonment or estoppel arguments.

We review a decision on a motion to alter or amend a judgment for an abuse of discretion. Quarterman v. Springfield, 91 Mass. App. Ct. 254, 260 (2017).